IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| INTERNATIONAL PAPER COMPANY and<br>FACTORY MUTUAL INSURANCE<br>COMPANY,<br>　　　Plaintiffs, | §<br>§<br>§<br>§<br>§ | |
| vs. | §<br>§ | CIVIL ACTION NO. _____ |
| DEEP SOUTH EQUIPMENT COMPANY,<br>NACCO MATERIALS HANDLING<br>GROUP, INC., OSRAM SYLVANIA<br>INC., RST INSURANCE COMPANY,<br>UVW INSURANCE COMPANY, and XYZ<br>INSURANCE COMPANY,<br>　　　Defendants, | §<br>§<br>§<br>§<br>§<br>§<br>§ | |

## ORIGINAL COMPLAINT

Plaintiffs International Paper Company and Factory Mutual Insurance Company file this

Original Complaint against Deep South Equipment Company, NAACO Materials Handling Group,

Inc., Osram Sylvania Inc., RST Insurance Company, UVW Insurance Company, and XYZ Insurance

Company and for cause of action would respectfully show the Court as follows:

### A. Parties

1.　　Plaintiff, International Paper Company ("IP") is a corporation organized under the

laws of the State of New York with its principal place of business in Memphis, Tennessee, and is

authorized to and doing business in the State of Louisiana.

2.　　Plaintiff, Factory Mutual Insurance Company ("FM") is a corporation organized

under the laws of the State of Rhode island with its principal place of business in Johnstone, Rhode

Island, and is authorized to and doing business in the State of Louisiana.

3.      Defendant, Deep South Equipment Company ("Deep South") is a corporation that is incorporated under the laws of the State of Louisiana. Deep South has its principal place of business in New Orleans, Louisiana. Deep South may be served with process by serving its registered agent, John Moffett Parsons, 6851 Greenwood Road, Shreveport, Louisiana 71119.

4.      Defendant, NACCO Materials Handling Group, Inc., ("NACCO") is a corporation that is incorporated under the laws of the State of Delaware. NACCO has its principal place of business in Portland, Oregon. NACCO does not have a registered agent for service of process in the State of Louisiana. NACCO was the manufacturer of a product which caused injury in this state and which, at the time the product was place in the stream of commerce, could have foreseen, realized, expected, or anticipated that the product might eventually be found in this state by reason of its nature and NACCO's marketing practices. NACCO may be served with process under the laws of the State of Louisiana by sending a copy of the summons and complaint to NACCO by certified mail to its president, Michael P. Brogan, NACCO Materials Handling Group, Inc., 650 NE Holladay St., Ste. 1600, Portland, Oregon 97232.

5.      Defendant, Osram Sylvania Inc. ("Sylvania") is a corporation that is incorporated under the laws of the State of Delaware. Sylvania has its principal place of business in Danvers, Massachusetts. Sylvania may be served with process by serving its registered agent, C T Corporation System, 5615 Corporate Blvd, Ste. 400B, Baton Rouge, Louisiana 70808.

6.      Defendant, RST Insurance Company ("RST") is a foreign or domestic insurance company or companies providing liability insurance to Deep South, authorized to do and doing business in the State of Louisiana, which can be served with process through the Secretary of State for the State of Louisiana.

ORIGINAL COMPLAINT                                                                                    Page 2

7.     Defendant, UVW Insurance Company ("UVW") is a foreign or domestic insurance company or companies providing liability insurance to NACCO, authorized to do and doing business in the State of Louisiana, which can be served with process through the Secretary of State for the State of Louisiana.

8.     Defendant, XYZ Insurance Company ("XYZ") is a foreign or domestic insurance company or companies providing liability insurance to Sylvania, authorized to do and doing business in the State of Louisiana, which can be served with process through the Secretary of State for the State of Louisiana.

### B. Jurisdiction

9.     The Court has jurisdiction over this lawsuit under 28 U.S.C. § 1332(a)(1) because the Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

### C. Venue

10.     Venue is proper in this district under 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district. The fire that gave rise to this lawsuit occurred in Red River Parish, Louisiana.

### D. Facts

11.     IP operates a paper mill in the vicinity of Mansfield, DeSoto Parish, Louisiana.  Part of the feed stock for the paper mill is made up from bales of used paper and/or corrugated container (hereinafter "OCC"). At all times material to this action, IP leased a warehouse and adjacent property (the "Warehouse") from Murphy Bonded Warehouse, L.L.C. ("Murphy"). The Warehouse was located Red River Parish, Louisiana. IP stored thousands of tons of OCC at the Warehouse. Under

the terms of the Warehouse lease between Murphy and IP, IP was required to provide property insurance for the Warehouse.

12.     IP contracted with Tango Transport L.L.C. ("Tango") to operate the Warehouse and transport OCC from the Warehouse to the paper mill. In order to handle the OCC, Tango rented a Hyster Fortis 80 lift truck (the "Truck") from Deep South. The Truck was designed and built by NACCO and had been sold by NACCO to Deep South, NACCO's dealer for the state of Louisiana. Deep South delivered the Truck to the Warehouse in late December 2009. Tango operated the Truck until January 7, 2010, using it to load, unload, stack and unstack OCC. During the period that the truck was in use at the Warehouse, Tango took reasonable steps to avoid the risk of fire and complied with maintenance and upkeep recommendations made by Deep South and/or NACCO. During the period that the Truck was in use at the Warehouse, no repairs or modifications were made to the electrical, fuel supply, cooling air, or exhaust systems of the Truck.

13.     On January 7, 2010, some time after 10:00 p.m., the Truck was parked in the Warehouse between two rows of OCC.  At the time the Truck was parked, the lights were on. The location where the Truck was parked was illuminated by a  high intensity light bulb (the "Light"), which had been manufactured and sold by Sylvania. The Light was located high above the Truck. At approximately 11:00 p.m., a Tango employee working in a different part of the Warehouse smelled smoke and discovered that a fire had broken out in the vicinity of the Truck. The only potential sources of ignition at that location were the Truck and the Light.

14.     Despite the efforts of several Tango employees to extinguish the fire, it spread and consumed the OCC in the Warehouse, destroying the Warehouse. Several days later, the hot ashes reignited the fire and destroyed OCC that was stacked to the north of the ruined Warehouse.

15.    Because the Warehouse became unusable for supplying OCC to the paper mill, IP was forced to lease alternative warehouse space in Shreveport and incur additional expense to transport OCC from the alternative warehouse space to the paper mill. IP has suffered a loss of profit as a result.

16.    IP purchased its property insurance from FM. As a result, FM has made payment to IP for the value of the OCC that was destroyed in the original fire and the subsequent re-kindle, the cost of demolition and rebuilding of the Warehouse, and the loss of profits caused by the unavailability of the Warehouse, for which FM is subrogated to the rights of the property owners.

17.    Deep South purchased liability insurance from RST. To the extent that Deep South is insolvent, bankrupt, or cannot be served with process, RST is liable to IP and FM for any amount for which Deep South is found liable.

18.    NACCO purchased liability insurance from UVW. To the extent that NACCO is insolvent, bankrupt, or cannot be served with process, UVW is liable to IP and FM for any amount for which NACCO is found liable.

19.    Sylvania purchased liability insurance from XYZ. To the extent that Sylvania is insolvent, bankrupt, or cannot be served with process, XYZ is liable to IP and FM for any amount for which Sylvania is found liable.

### E. Claims Against Deep South

Count 1 - Product Liability.

20.    IP and FM allege and incorporate by reference Paragraphs 1 through 19 of this Original Complaint as though fully set forth herein.

21.     Deep South is liable to IP and FM pursuant to the Louisiana Products Liability Act, La. R. S. 9:2800.51, *et seq*.("LPLA"), because the Truck, a corporeal moveable and thus a product under the LRPA, was defective as delivered by Deep South, rendering it unreasonably dangerous in construction or composition, design, and/or was furnished without adequate warning and proximately causing the fire. Deep South was a manufacturer under the LPLA in that it remanufactured, reconditioned, and/or refurbished the Truck; exercised control over and/or influenced a characteristic of the design, construction or quality of the Truck that caused damage; and incorporated, or should have incorporated, into the Truck a component or part manufactured by another manufacturer. Deep South knew the Truck would be used in OCC handling service where its reasonably anticipated use included having OCC baling wire wrap around its axles, experiencing vibration of its wiring harnesses, and having loose paper drawn into the engine compartment and brought into contact with its exhaust components. The Truck should have been equipped so as to be suitable for use in OCC handling service. Deep South was a merchant engaged in the business of supplying lift trucks for warehouses handling OCC. Deep South was aware of safer alternative designs that were feasible in light of then-existing reasonably available scientific and technological knowledge and then-existing economic practicality.  Deep South should have selected a safer alternative design and should have ensured the Truck was in safe mechanical and electrical condition at the time it was delivered to the Warehouse by Deep South. Deep South's failure to select a lift truck that was appropriate for OCC handling service, failure to ensure the Truck was in safe mechanical and electrical condition and failure to ensure it was suitably equipped for OCC handling service were the producing and proximate cause of the fire and IP and FM's damages.

Count 2 - Negligence.

22.     IP and FM allege and incorporate by reference Paragraphs 1 through 21 of this Original Complaint as though fully set forth herein.

23.     Deep South is liable to IP and FM, pursuant La. C. C. art. 2315, because Deep South owed IP, as the owner of personal property that was in the area where the Truck would be used, and Murphy, as the owner of the building in which the Truck would be used, the duty of reasonable care in the selection, preparation, maintenance, and equipping of the Truck that it rented to Tango. Deep South failed to use reasonable care in the selection, preparation, maintenance, and equipping of the Truck in one or more of the following ways:

a.     the electrical system of the Truck was worn and damaged as it was supplied to the Warehouse making it capable of sparking and igniting loose recycled paper,

b.     the exhaust system of the Truck was uninsulated as it was supplied to the Warehouse making it capable of igniting loose recycled paper,

c.     the cooling air flow through the engine compartment, as the Truck was supplied to the Warehouse, was not modified to as to avoid lifting loose recycled paper off the floor and drawing it into the engine compartment where it was subject to being ignited by the electrical system, hot engine, or hot exhaust system, and

d.     the fuel control system, as the Truck was supplied to the Warehouse, was improperly maintained such that the engine generated excessive temperatures rendering it capable of igniting loose recycled paper,

24.     These negligent acts or omissions were the proximate cause of the damage sustained by IP and FM.

---

ORIGINAL COMPLAINT                                                                                    Page 7

## F. Claims Against NACCO

Count 3 - Product Liability - Design Defect.

25.     IP and FM allege and incorporate by reference Paragraphs 1 through 24 of this Original Complaint as though fully set forth herein.

26.     NACCO is liable to IP and FM pursuant to the LPLA, including but not limited to La. R. S. 9:2800.56 because the Truck, a corporeal moveable and thus a product under the LRPA, was defective when it left NACCO's control, rendering it unreasonably dangerous, causing the fire. NACCO is a manufacturer under the LPLA in that it is an entity who is in the business of manufacturing products, such as the Truck, for placement into trade or commerce and exercised control over and/or influenced a characteristic of the design, construction or quality of the Truck that caused damage. There existed an alternative design for the Truck that was capable of preventing the fire. The likelihood that the Truck's design would cause the fire and the gravity of the damage from the fire outweighed the burden on NACCO of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the Truck. NACCO failed to use reasonable care to provide an adequate warning to users and handlers of the Truck in OCC handling service. NACCO knew vehicles it manufactured such as the Truck would be used in OCC handling service where their reasonably anticipated use included having OCC baling wire wrap around their axles, experiencing vibration of their wiring harnesses, and having loose paper drawn into their engine compartments and brought into contact with their exhaust components. Vehicles such as the Truck should have been equipped so as to be suitable for use in OCC handling service. NACCO was a merchant engaged in the business of supplying lift trucks for warehouses handling OCC. NACCO was aware of safer alternative designs that were feasible in light of then-existing reasonably available

scientific and technological knowledge and then-existing economic practicality. NACCO should have selected a safer alternative design. NACCO's failure to design the Truck so that it was appropriate for OCC handling service were the producing and proximate cause of the fire and IP and FM's damages.

Count 4 - Product Liability - Marketing Defect.

27.    IP and FM allege and incorporate by reference Paragraphs 1 through 26 of this Original Complaint as though fully set forth herein.

28.    NACCO is liable to IP and FM pursuant to the LPLA, including but not limited to La. R. S. 9:2800.57, because NACCO failed to warn that the Truck was unreasonably dangerous when used in OCC handling service. NACCO knew vehicles it manufactured such as the Truck would be used in OCC handling service where their reasonably anticipated use included having OCC baling wire wrap around their axles, experiencing vibration of their wiring harnesses, and having loose paper drawn into their engine compartments and brought into contact with their exhaust components. NACCO should have warned Deep South and Tango that the Truck was unsafe for use in OCC handling service as manufactured and that had to be modified before being used in OCC handling service. NACCO's failure to warn that the Truck was unreasonably dangerous when used for OCC handling service was the producing and proximate cause of the fire and IP and FM's damages.

Count 5 - Negligence.

29.    IP and FM allege and incorporate by reference Paragraphs 1 through 28 of this Original Complaint as though fully set forth herein.

30.     NACCO is liable to IP and FM, pursuant La. C. C. art. 2315, because NACCO owed IP, as the owner of personal property that was in the area where the Truck would be used, and Murphy, as the owner of the building in which the Truck would be used, the duty of reasonable care in the design, equipping, manufacture, and marketing of the Truck. NACCO failed to use reasonable care in the design, equipping, manufacture, and marketing of the Truck in one or more of the following ways:

      a.    the electrical system of the Truck was susceptible to wear making it capable of sparking and igniting loose recycled paper,

      b.    the exhaust system of the Truck was uninsulated making it capable of igniting loose recycled paper,

      c.    the cooling air flow through the engine compartment was capable of lifting loose recycled paper off the floor and drawing it into the engine compartment where it was subject to being ignited by the electrical system, hot engine, or hot exhaust system,

      d.    the fuel control system would allow the engine to operate such that it would generate excessive temperatures rendering it capable of igniting loose recycled paper, and

      e.    failing to warn of the foregoing hazards.

31.     These negligent acts or omissions were the proximate cause of the damage sustained by IP and FM.

### G. Claims Against Sylvania

#### Count 6 - Product Liability - Design Defect.

32.     IP and FM allege and incorporate by reference Paragraphs 1 through 19 of this Original Complaint as though fully set forth herein.

33.     Sylvania is liable to IP and FM pursuant to the LPLA, including but not limited to La. R. S. 9:2800.56, because the Light was defectively designed rendering it unreasonably dangerous and causing the fire. In service the Light generated high temperatures and stresses in its components rendering it susceptible to breakage, which would drop high temperature components onto any material below, risking igniting such material. Safer alternative designs existed. Sylvania was a merchant engaged in the business of manufacturing light bulbs for warehouses. Sylvania should have selected a safer alternative design for the Light. Sylvania's failure to design the Light more safely was the producing and proximate cause of the fire and IP and FM's damages.

Count 7 - Product Liability - Marketing Defect.

34.     IP and FM allege and incorporate by reference Paragraphs 1 through 19 of this Original Complaint as though fully set forth herein.

35.     Sylvania is liable to IP and FM pursuant to the LPLA, including but not limited to La. R.S.9:2800.56, because Sylvania failed to warn that the Light was unreasonably dangerous when used in a recycled paper warehouse. Sylvania was a merchant engaged in the business of manufacturing light bulbs for warehouses. Sylvania knew that light bulbs it manufactured such as the Light could be used in recycled paper warehouses where they would be susceptible of causing fires. Sylvania should have warned that the Light was unsafe for use in a recycled paper warehouse. Sylvania's failure to warn that the Light was unreasonably dangerous when used in a recycled paper warehouse was the producing and proximate cause of the fire and IP and FM's damages.

Count 8 - Product Liability - Manufacturing Defect.

36.     IP and FM allege and incorporate by reference Paragraphs 1 through 19 of this Original Complaint as though fully set forth herein.

37. Sylvania is liable to IP and FM pursuant to the LPLA, including but not limited to La. R. S. 9:2800.55, because of a manufacturing defect in the Light rendering it unreasonably dangerous when used in a recycled paper warehouse. Sylvania was a merchant engaged in the business of manufacturing light bulbs for warehouses. Such manufacturing defect was the producing and proximate cause of the fire and IP and FM's damages.

Count 9 - Negligence.

38. IP and FM allege and incorporate by reference Paragraphs 1 through 19 of this Original Complaint as though fully set forth herein.

39. Sylvania is liable to IP and FM pursuant to La. C. C. art. 2315 because Sylvania owed IP, as the owner of personal property that was in the area where the Truck would be used, and Murphy, as the owner of the building in which the Truck would be used, the duty of reasonable care in the design, marketing, and manufacture of the Light. Sylvania failed to use reasonable care in the design, marketing, and manufacture of the Light in one or more of the following ways:

a. failing to ensure the glass components would not reach temperatures that were capable of igniting paper,

b. failing to ensure the glass components would not be subject to excessive stresses rendering them capable of breaking and scattering hot fragments that were capable of igniting paper,

c. failing to ensure that any hot fragments that might be scattered would be caught and prevented from coming into contact with paper on the floor of the warehouse and igniting it, and

d. failing to warn of the foregoing hazards.

40.     These negligent acts or omissions were the proximate cause of the damage sustained by IP and FM.

## H. Claims Against RST

Claim 10 - Insurer's Liability.

41.     IP and FM allege and incorporate by reference Paragraphs 1 through 24 of this Original Complaint as though fully set forth herein.

42.     RST is liable to IP and FM pursuant to the the Insurance Code of Louisiana, La. R. S. 22:1269 for any amount for which Deep South is found liable, in the event that Deep South is insolvent, bankrupt, or cannot be served with process.

## I. Claims Against UVW

Claim 11 - Insurer's Liability.

43.     IP and FM allege and incorporate by reference Paragraphs 1 through 31 of this Original Complaint as though fully set forth herein.

44.     UVW is liable to IP and FM pursuant to the the Insurance Code of Louisiana, La. R. S. 22:1269 for any amount for which NACCO is found liable, in the event that NACCO is insolvent, bankrupt, or cannot be served with process.

## J. Claims Against XYZ

Claim 12 - Insurer's Liability.

45.     IP and FM allege and incorporate by reference Paragraphs 1 through 40 of this Original Complaint as though fully set forth herein.

46.     XYZ is liable to IP and FM pursuant to the the Insurance Code of Louisiana, La. R. S. 22:1269 for any amount for which Sylvania is found liable, in the event that Sylvania is insolvent,

bankrupt, or cannot be served with process.

### K. Damages

47.    As a direct and proximate result of the Defendants' conduct, Plaintiffs suffered the following damages and injuries:

a.    Destruction of recycled paper and cardboard.

b.    Destruction of the Warehouse.

c.    Lost profits due to the additional expense of renting alternative warehouse space and the additional expense of transporting the recycled paper and cardboard from the alternative warehouse space to the paper mill.

### L. Prayer

48.    For these reasons, Plaintiffs ask for judgment against Defendants for the following:

a.    Actual damages.

b.    Prejudgment and postjudgment interest at the highest rate permitted by law.

c.    Costs of suit.

d.    All other relief the Court deems appropriate.

WEEMS, SCHIMPF, GILSOUL, HAINES,
LANDRY & CARMOUCHE (APLC)


By      */s/ Robert H. Shemwell, Jr.*
        Robert H. Shemwell, Jr. - TA
        Bar Roll No. 22616
        Brian D. Landry
        Bar Roll No. 21688
        912 Kings Highway
        Shreveport, LA 71104