# EXPERT REPORT #1

# JOHNNY THORNTON

**(Plaintiffs' Expert Disclosures 10.15.12)**

*From the desk of*
*Johnny Thornton*

*September 14, 2012*

~ 1 ~

---

### ASSIGNMENT

On January 14, 2010, a request was received by telephone from Attorney John Hart, to become involved in the documentation of an incident of fire at a facility occupied by **International Paper Company** and/or **Tango Transport**. The facility was located near Mansfield, Louisiana. There was no mailing address furnished. The location was described to be and found at/near Highway 509 and/or Parish Road 405.

This fire scene examination was conducted in accordance with guidelines that are established and recognized by credible fire/forensic investigators. The systematic investigation of this scene applied appropriate recommended practices and procedures. Those procedures led to the foundation for the findings, conclusions and/or opinions.

The data was collected, recorded and/or photographed from the available sources. This data was analyzed for impact on the conclusions and/or opinions that are listed within this report. The scene was examined, measured, diagrammed and recorded as found within the body of this report and/or file.

The various theories as to fire origin, cause, spread and/or responsibility for the fire were, and/or have been, analyzed and tested against known (published) principles of the fire science community.

Based on observations of this loss and my training and experience, it was the conclusion that the cause of the above captioned loss should be considered and/or classified as accidental, due to paper product coming in contact with the heat of the exhaust manifold of the **Hyster 80**.



The Latitude/Longitude coordinates was obtained as shown at right of this text. The data was used to obtain the most accurate weather data.

The weather conditions were reported at or from a weather station at

*Providing our client with timely and reliable data based on training and experience, since 1966.*

*From the desk of*
*Johnny Thornton*

*September 14, 2012*

~ 2 ~

Shreveport, Louisiana.

- Temperature range:     23.2 F. to 46.0 F.
- Precipitation:            0.26 inches with rain predicted
- Wind speed:             16.90 MPH with maximum listed as  26.47 mph North/Northwest

Research was requested and obtained from **Vaisala STRIKEnet®** was obtained to complete this phase of the site weather condition review.  That report, dated September 26, 2012 08:03:01 PM, indicated that lightning was not detected.

The fire department report revealed that the fire started at or near 11:00 P.M., on January 7, 2010.  The fire incident occurred in the Red River (Louisiana) Parrish area and the volunteer fire department(s) that responded included the Red River Parrish Volunteer Fire Department.  The Chief was listed as Shane Felts.  The fire report was examined and found to include some information that could not be confirmed, based on the site visit/interviews.  The report made an observation that the structure was fully involved with fire.  That specific statement was confirmed by the eyewitnesses that were on site at the discovery time of the fire.

The fire scene was inspected on the occasions that have been systematically and thoroughly documented.  All findings and/or conclusions made as to the origin, cause and/or opinions were based on the systematic and thorough examination of the incident site, witness statements and my training and experience.

## PROPERTY DESCRIPTION

The loss/incident site was located in a rural area and comprised of an office complex, open and closed storage and/or materials handling facilities.  The structure involved was measured as being approximately five hundred (500) by three hundred (300) feet.



*From the desk of*
*Johnny Thornton*

*September 14, 2012*

~ 3 ~

There were two (2) offices located approximately fifty (50) feet west of the covered portion of the warehouse.  The fire/smoke damage to those offices was limited to the possibility of some smoke/soot deposits that were a result of the main body of the fire.  There was found no evidence of fire causation from within either of those areas of the facility.



The designation of any aisle, placement of product or quantity of that product for this report is based on a "whiteboard" found on the east wall of the clerical office.  This whiteboard was used on a daily or routine basis to identify the position and/or quantity of specific paper goods by the employees.

The fire started in an area described as the *"D" Aisle*, near the North to South main drive aisle.  This area is referenced as a *general area* of origin, which will be discussed in more detail in subsequent paragraphs.

The product within the warehouse was damaged to a degree that had reduced the stored combustible paper to a smoldering mass that was observed throughout the entire covered portion.

*From the desk of*
*Johnny Thornton*

*September 14, 2012*

~ 4 ~

That smoldering mass continued to smolder for days beyond the date of the loss, January 7, 2010, exhibiting flaming combustion on occasions.

The photo at the right of this paragraph is typical of the destruction.

As the original site assessment was being conducted it was noted that the product had a layer of ash and/or char over the top layer.



When the burn damaged product was disturbed either by human actions or weather conditions, the smoldering fire would flame up.

On January 29, 2010, workers were at the site, both on the slab where the **OCC** was stored and/or in the office building.  They noticed that the wind picked up to a point that it blew the trash and ash across the entire area.  The blown ash was described to look like it was snowing.

The weather history for January 29, 2010 was researched and the following data was obtained from the Shreveport Regional Station:
- **Temperature Ranges**
  Minimum Temperature:  37.0 °F
  Mean Temperature:  44.1 °F
  Maximum Temperature:  69.1 °F
- **Precipitation:**  1.24 IN
  [Rain and/or melted snow reported during the day.]
- **Visibility:**  7.8 MI
- **Wind Speed and Gusts**
  Mean Wind Speed:  11.05 MPH
  Maximum Sustained Wind Speed:  15.00 MPH
  Maximum Wind Gust:  23.02 MPH

At a point in time, on the day of this rekindle, the worker on the slab noticed a bale of white paper was burning on the slab.  He observed that the wind was blowing hard from the fire damaged covered building.  He drove the lift truck through the area of burning paper to the off ramp.

There was observed only one (1) source of heat for the ignition of this incident of fire. That source of



*Providing our client with timely and reliable data based on training and experience, since 1966.*

*From the desk of*
*Johnny Thornton*

*September 14, 2012*

~ 5 ~

heat was the smoldering fire that was rekindled by the wind and embers from that covered structure/paper product(s).



At and along the West side or extents of the covered area warehouse there were sixteen (16) trailer height docks.  There were eight (8) each on the North and/or South main aisle.  That numbering system started at the North end.

On the night of the incident the mill and warehouse were engaged in a *"diversion"* mode.  The mill was not accepting direct shipment and all incoming bales of paper goods were being transported to and received by the facility where the fire occurred.  There were trucks or trailers parked at each of those trailer height docks.  The trailers were being unloaded and other full trailers were being moved into the dock areas.  The open space at the loading docks as found after the fire was due to the fact that the night shift employees and/or truck drivers moved the trailers.



The damage to the open air covered (pole barn type) facility was typified by the destruction shown in the photo at right of the *general area of origin*.  The structure consisted of metal on metal, non-combustible materials.

The combustible materials in the *general area of origin* included: the lift truck and the baled paper goods.  There may have been some quantity of hydraulic fluid at or near that area.  That fluid may have contributed insignificantly to the combustible fuel load, but was not an ignition source.

During the site inspection(s) and subsequent examinations of items of evidence all of the potential source(s) of heat for ignition was considered and/or thoroughly evaluated.  This evaluation process was conducted in cooperation with other investigative groups/experts.



The scene was processed and participants were afforded ample opportunity to examine the site. The processing of the scene included identifying and collecting items of interest or evidence. Those proceedings were recorded by participants and the plat shown in this report may be of assistance in the proper positioning of the found items.

Within the *general area of origin* the following *potential* source(s) of heat for ignition for this incident were identified and/or considered:
- structural electrical wiring (at ceiling level)
- structural electrical light fixture(s) (at ceiling level) and/or the
- electrical system of the **Hyster 80** and the
- exhaust system of the **Hyster 80** lift truck shown in the previous photograph.

The structure was furnished with electrical power by:
**Valley Electric Corporation**
972 Oxford Road
Mansfield, Louisiana 71052
318.872.3488

According to an operator at the above listed number Valley Electric was bought out by:
**American Electric Power Company, Inc.**
Also known as: **Southwestern Electric Power Company**
[www.swecp.com]
The information above was obtained from the same listed phone number.  The pertinent timeline for that incident was found in a document provided by the electrical energy provider.

*From the desk of*
*Johnny Thornton*

*September 14, 2012*

~ 7 ~

All time references in reference to the electrical power were dated as being on January 7, 2010.

- 5:54 P.M.  Tango Logistix: Mr. Gates reported no power at the warehouse.
- 5:55 P.M.  Crew being assembled to respond.
- 5:56 P.M.  Charles Howard enroute.
- 7:26 P.M.  Notification that transformer outage.
- 10:01 P.M.  Notification of power restored to structure.

The structural electrical system was considered and eliminated as a *potential* source of heat for ignition for this incident.  The electrical system was examined; beginning at the pole at the southwest corner of the covered portion of the warehouse there was observed transformers that had been recently replaced.



The electrical conductors from that set of transformers was observed to extend to and/or through a set of meter connections and then to the interior portion of the warehouse.

The service of an electrical engineer was provided to examine the components of electrical wiring and appliances within both the structure and/or lift truck.

There was found no evidence by this observer that would support a theory of an electrical source of heat energy for the cause of this fire loss.  All of the fire damage to those systems was attributed to a result of the fire, not the cause.  The specific findings of the electrical engineer may be addressed in a separate report.

There was found panel box (es) at both the south and north end(s) of that structure.  All of the burn patterns at or near those appliances indicated that the fire/heat had travelled to those units.  Each of the panel boxes sustained external type damage that was caused by the approaching fire.  There was found no evidence that would have supported any theory of fire causation at or from those appliances.  Those appliances were collected and preserved for any inspection that may be needed.

From those panel boxes there was observed metal electrical conduits that protected the conductors that were observed throughout the covered portion of the warehouse.

*From the desk of*
*Johnny Thornton*

*September 14, 2012*

~ 8 ~

Above the *general area of origin* there was observed conduit and conductors that supplied electrical power to the light fixture(s).  The conduit was found to have a melted feature as shown in the photographs below.  When the copper conductors were extracted there was found a corresponding damage.  This arc mark on both the conduit and conductors further identified the *general area of origin*.  The damage to this section

 

of the electrical distribution system was caused by external heat.  This should be construed to mean that this *potential* source of heat of ignition was eliminated as the cause of this fire.  Those items were collected and preserved for any inspection that may be required.

The light fixture was observed, collected and preserved for inspection(s) as may have been required or requested.  Based on the directional and/or intensity type burn patterns found at the *general area of origin,* this fixture was not suspected as the source of heat of ignition or the cause of this fire.  These findings were confirmed as being the opinion of the electrical engineer involved with this examination.

There were employees on duty at the time of the discovery of the fire.  There had been a shift-change prior to the fire.  Procedures for shift change inspection and/or maintenance of the lift trucks was outlined in a check list.

All of the fire/flames, at or during the first (1st) sighting, were attributed to the area of the **Hyster 80** lift truck that was shown in the various photographs.

The first (1st) witness (Gregory Charles) to fire was interviewed and consistently during

*Providing our client with timely and reliable data based on training and experience, since 1966.*

*From the desk of*
*Johnny Thornton*

*September 14, 2012*

~ 9 ~

all interviews and/or sworn testimony, maintained that the fire was progressing from within the engine compartment of the **Hyster 80** that was parked in Aisle "D". The driver (Cleo Wilson) of the **Hyster 80** was in the clerical office during the original interview, but declined to answer any questions. During the interview there was no comment of disagreement by Wilson.

The witness (Gregory Charles) being interviewed stated that he was off-loading trucks/trailers at the South end of the warehouse. At an indefinite point in time, he reported that he smelled smoke. As he backed the lift truck (**Hyster 90**) out of the trailer truck he saw a glow of fire at *Aisle "D".* He started to drive his lift truck to the position of the fire area. A decision was made to run (not drive) to the location of the fire.

Charles gathered fire extinguishers along the way to the location of the fire, yelling to the other employees that were in the office area. Those employees were working on paper work at a computer station.

The first (1st) witness reported that he attempted to extinguish the flames in an area of the engine compartment near the driver (left) side of the lift truck. He physically pointed to the opening of the metal frame and fiberglass type cowling of the **Hyster 80**. A second (2nd) or secondary attempt to extinguish the flames was made at the area of the mast of the lift truck.





Wilson reportedly got onto the **Hyster 80** and started the engine during the approximate time period that Charles was attempting to extinguish the flames. The secondary attempt to put out the flames was at the area of the mast or squeezer clamp are of the lift truck. There appeared to be no problem in starting the lift truck.

*There was observed short/arc type damage to the battery cable. The damage was a direct or dead short. The damage would have caused the flow of current to the starter to be of a magnitude that the lift truck would not have started. The electrical engineer has consulted as this and other findings by that expert.*

*Providing our client with timely and reliable data based on training and experience, since 1966.*

*From the desk of*
*Johnny Thornton*

*September 14, 2012*

~ 10 ~

## GENERAL AREA OF ORIGIN

The area of origin for this fire loss has been discussed within the main body of this report as a *general area of origin.*



The location of the lift truck in *Aisle "D"* was confirmed and/or established by the finding of a hub cap. That artifact was found at an area under the light fixture and/or conduit that was positioned over the **Hyster 80**.

There was a *missing* hub cap on the **Hyster 80** at the right front wheel.

During the site and evidence inspection each of the *potential* sources of accidental heat for ignition were analyzed systematically and thoroughly. The spalling of the concrete shown above may have been caused by the near complete combustion of available materials. (There was found no evidence of this fire loss/incident being purposefully set.)

## OPINIONS AND/OR CONCLUSIONS

The opinions and/or conclusions reached were based on the entire process of this examination, my training and experience. The scope of the examination included but was not limited to, scene examinations, the interviews of witnesses, review of depositions and discussions with experts from fields of expertise as needed has led to the following conclusions and/or opinions.

The area of origin for the original fire was found within the engine compartment of the **Hyster 80** that was parked in *"D" Aisle.*

*From the desk of*                                            *September 14, 2012*
*Johnny Thornton*                                                      ~ 11 ~

The other *potential* accidental sources of heat for ignition were considered and eliminated were as follows:

- Carless smoking.  This factor was eliminated by the fact that the lift truck operators working in the storage facility did not smoke.
- Structural electrical system.  The electrical system was examined and found to have been damaged by the fire and/or heat transfer.  Based on the entire examination of the burn patterns, there was found no evidence that would support a theory of fire causation by that *potential* source of heat.
- Lightning strike.  There was no evidence of lightning activity in area.
- Short, arc or failure of the lift truck electrical system.  The lift truck was started and driven from the general area of origin to the location as found after the fire.  The damage to the conductor(s) of the lift truck could not have occurred and caused this loss and still be capable of starting the lift truck.

The only *potential* source of heat of ignition at the area of origin that could not be eliminated was from within the **Hyster 80** lift truck.  This lift truck and associated items of evidence were examined and the following findings were offered:

- Wire was found to have bound to the undercarriage system of the wheel/axle assembly.  The wire was the size associated with the bales of paper goods being stored.  The examination of the undercarriage revealed no evidence of extended portion(s) of that type wire.  Dragging or rubbing of this type wire may be associated with friction heating for ignition.  Based on the definitive directional and/or intensity type burn patterns of localized fire damage and the above listed process, there was no evidence that would support a theory of this type ignition source.
- Burning paper being pushed up against the **Hyster 80** by the operator of the **Hyster 90** was not plausible or credible.  The operator of the **Hyster 90** was off loading trucks at the opposite end.  Any loose paper at that end of the structure would have been pushed into a trailer at Dock 9, as was observed during the site visits.  This sort of ignition with the available materials in an open area would have caused burn patterns of fire damage to the **Hyster 80** that did not exist.  With the available materials and wind speed the fire would have advanced away from the engine compartment.  The directional and/or intensity type burn patterns found on the lift truck fully support the consistent statement of the driver of the **Hyster 90**.

*From the desk of*
*Johnny Thornton*

*September 14, 2012*

~ 12 ~

The **Hyster 80** was examined and the directional and/or intensity type burn patterns were analyzed along with the witness interviews and the following comments are offered:

- The fire damage patterns to the **Hyster 80** were consistent with fire ignition from within the engine compartment.
- During the day to day operation, drivers of lift trucks experienced broken bales and paper was commonly found on the floor. That paper was exposed to degradation due to traffic and would become shredded and turned into a dusty material.
- Those fire patterns on the vehicle were distinct and include, but may not be limited to the evidence observed and presented in the photographs found below.
- The cooling fan creates suction as the engine is being operated. That action caused paper, shredded and dust forms, to clog the radiator and come in contact with the components of the engine compartment.



The overall fire damage to the left side of the Hyster 80 revealed the most severe damage to be more concentrated at the area of the cowling over the engine compartment.

That damage was to the extent of a clear line of "burn through" that allowed the fiberglass type material to become *detached*. The hole caused by the fire allowed a view into the engine area. In close proximity to that opening was found the exhaust manifold for the engine.



There were cavities formed by both the exhaust manifold and the metal housing for an air filter, as shown at left with the portion of cowling removed.

The vehicle manifold, during normal operation is known to achieve temperatures within and above the ignition temperature of ordinary combustibles. This warehouse was filled with paper, which is an ordinary combustible. The service of a lift truck type expert was used by the client to further document those temperature ranges. For information a report by that expert may be generated.

*From the desk of*
*Johnny Thornton*

*September 14, 2012*

~ 13 ~



The photograph at left indicates the direction of the fire from within the engine compartment.

The right side of the vehicle seating area was examined and the comparison of the fire burn patterns revealed an appreciable, but lesser degree or amount of heat stress or damage. The lack of damage to the right side confirmed that the fire had progressed from within the engine compartment at the exhaust manifold. This fiberglass type would have received more damage if the driver of the **Hyster 90** had pushed paper against the **Hyster 80**.



Based on these findings, my training and experience, it is my opinion that the fire that occurred at this location is classified as accidental.

Having eliminated all but one (1) of the *potential* accidental sources of heat for ignition of this loss and based on the entire process of this examination it is my opinion that the fire was caused by an ignition of paper products that were in close proximity to the unprotected exhaust manifold on the **Hyster 80**.

Further, the second (2nd) fire at this location was caused by a rekindling of the original fire. This opinion is based on the same methodology as stated within this report.

The observations contained in this report are limited to our site inspection and/or interviews as noted and/or described. Should additional information become available,

*From the desk of*
*Johnny Thornton*

*September 14, 2012*

~ 14 ~

opinions and/or conclusions, if deemed necessary. This report has been formulated expressly and confidentially for the named recipient. Distribution or use by any other individual or entity is strictly prohibited.

Should you require any assistance or further information, contact me at your convenience.

Respectfully,

Johnny Thornton



















*From the desk of*
*Johnny Thornton*

*September 14, 2012*

~ 1 ~

Johnny Thornton
Born: November 12, 1940

Johnny graduated from Ferris High School and attended one (1) year at Texas A&M College in 1960. He has been married to Carol Jean (Young) Thornton since 1961 and is the dad of two (2) sons and is blessed with three (3) grandchildren.

On March 17, 1963, Johnny began a career as a firefighter for the Mesquite Texas Fire Department. Early on involvements in that department led to an interest in the determination of the origin, cause and responsibility for fire(s).

The basic skills of fire suppression operations, both in classroom hours and, most important, the everyday activities of the on-the-job training led to applying for and receiving an appointment in the Houston Texas Fire Department on June 16, 1966. His career in the fire suppression division was spent in an area of Houston, Texas that was responsible for responding to more fires than any other station in the city. That firefighting, training and experience from both fire departments was a solid foundation for an eventual promotion through the ranks to a position in the Houston Fire Department, Fire Investigations Division, and ultimately led him to the private practice of fire and explosion investigations, and progressively to the area of consultant in that field.

MagniFacts, Inc. was formed in 1986 and performed field type fire/explosion examinations, responding to an approximate average of two hundred (200) fires per year until about 2008. The company at present is dissolved and Johnny focuses on the practice of fire/explosion consultation and/or expert witness services.

While in the Houston Fire Department Investigations Division, his duties included participation in numerous origin and cause investigations. Those investigations included all aspects of fire scene documentation of both structural and vehicular fires and/or explosions. The various causes of those fires ranged through all the classifications as listed in the guidelines used by objective fire/explosion scene investigators.

Along with his duties of fire/explosion investigator time was spent in the re-organization of the division's evidence handling facility and inventory system. His fingerprinting ability were gained through studies with the Federal Bureau of Investigations (FBI) and is credited with a publication relating to a technique for lifting and identifying latent fingerprints from fire damaged containers. There are no copies of that article within my care.

A portion of his tenure with the Houston Fire Department Investigation Division was spent as a member of a section dedicated to major cases, organized crime and intelligence gathering. Those efforts led to the identification and arrest of serial arsonist(s), as a result of surveillance and a team effort of investigative work. Those major case(s) were a cooperative effort with officials from city, county and federal agencies.

In 1986, Johnny retired with over twenty (20) years of service, and had already formed MagniFacts, Inc. as a private practice in the same/similar field of origin, cause and responsibility type activities. Over the years there has been an on-going education, training and valuable experience needed to provide the most objective methodology in the field and has been allowed to testify in this area of expertise, as such in both state and federal courts. The total number of opportunities to testify in deposition, arbitration or/and courtroom appearances is estimated at over approximately seventy (70).

Coupled with all of the education, training and experience from the two (2) fire departments and as a private practice fire/explosion investigator/consultant, Johnny has accumulated over forty-five (45) full time years involved in fire, suppression and/or documentation.

*Providing our client with timely and reliable data based on training and experience, since 1966.*

| Magnifacts Case Number | Cause Number/Court | Style | Attorneys | Date | Type of Appearance |
|---|---|---|---|---|---|
| 93081C | 920291 - Washington County, Texas Criminal Courts | Toney Rodgers | Paul Ehlert, EHLERT, WEISLER & BETTS, P.C. 1115 E. Main Brenham, TX | | Open Court |
| 90024 | B-92-25 | LA International -v- Virginia Bell, etal. & Mr. Coffee | Not Available | 7-1-93 | Deposition |
| 92128 | 37, 316-85 85th District Court Brazos County, Texas | Clayton Williams -v- John Jack and Luckenbill, etal. | Byron Lee, COATS, ROSE, YALE, HOLM, RAYMON & LEE | 8-16-93 | Deposition |
| 91140 | 91-17672 147th Court Judicial District, Travis County, Texas | Harmon etal. -V- Emergency Network, Inc. | Michael M. Fulton | 6-11-92 | Deposition |
| 91211 | 89-035305 33rd Judicial District Court Harris County, Texas | Jane Johnson -v- Hammond organ | MC FALL & SARTWILLE 2500 Two Houston Center Houston, TX 77010 | 4/7/92 | Deposition |
| 89150 | H 910616 U.S. Dist. Court Southern Dist. Of Texas, Galveston Div. | Isidro Garza and Maria G. Garza -v- Fire Insurance Exchange | Steve Pate FULBRIGHT & JAWORSKI | | Deposition |
| 92051 Rosalie Spell | | | Noel Bailey | 11/7/95 - 11/8/95 | Open Court |
| 91169 | | Tipton Co. et al. vs. ADT Security, et al. | Unavailable | | |
| 93209C | 92-05-14;178 | Suzannah H. Tucker vs Tommy Barker/Lennox Industries, Inc. | EWBANK & HARRIS, P.C. | 6-23-94 | Deposition |

| Magnifacts Case Number | Cause Number/Court | Style | Attorneys | Date | Type of Appearance |
|---|---|---|---|---|---|
| 91109 | 91-C1-17829 District. Court Bexar County, Texas | Winns Stores, Inc. vs GTE Products Corp. et al. | Charles Kelly CIGNA OF LLOYDS INS. CO. | 8-31-93 | |
| 90024 | B-92-25 U. S. District. Southern District., Brownsville, Texas | LA International Condo Assoc. vs. Virginia Bell, et al .& Mr. Coffee, Inc. | Not Available | 7-1-93 | Deposition |
| 86003 | 42,072 359th Judicial District Court, Montgomery County, Texas | ALLSTATE INSURANCE COMPANY Vs Thomas Johnson/ Ronnie Lofton | FULBRIGHT & JAWORSKI | Not Available | Open Court |
| 92160 Harvey Cooper | 90-12134 57th Judicial District Court Harris County, Texas | Harvey E. Cooper vs STATE FARM LLOYDS | Tim Herron Stephen Hamilton | 12-30-91 | Deposition |
| 91072 | | Episcopal High School of Baton Rouge vs Blaine Dormus | Bill Wilson | 8-21-95 | Deposition |
| 86003 | 42,072 359th District Court Montgomery County, Texas | ALLSTATE INS. CO. vs Thomas Jefferson and Ronnie Lofton | Steve Pate FULBRIGHT & JAWORSKI | 12-15-93 | Deposition |
| | 90-62777 334th Judicial District Court Harris County, Texas | Fritz Knudson vs. Fritz Hans Schroeder | Owen Cecil Employers of TEXAS LLOYDS | 7-21-92 | Deposition |

| Magnifacts Case Number | Cause Number/Court | Style | Attorneys | Date | Type of Appearance |
|---|---|---|---|---|---|
| 96017C | 94-06571 126th Judicial District Court Travis County, Texas | Vincent Canzoneri and Diane Canzoneri Vs. S & A Marinas, Inc., and Steve Cokins, individually and Eclipse Electric, Inc. | Jim Ewbank, EWBANK & BYROM, P.C., and GUY M. Hohmann, HOHMANN, WERNER & TAUBE, L.L.P. | April 25, 1996 | Deposition |
| 93203 | | Lockwood | VINCENT & ELKINS | November 12, 1996 | Deposition |
| 94053 | 96-14086 | Hall vs. Wilson (Joan Wilson) | PLUMMER & ASSOCIATES 1010 Lamar, Suite 1510 Houston, Texas 77002  Michael Cooper LUEDERS & BOANERGES, P. C. 9432 Old Katy Road, Suite 100 Houston, Texas 77055 | January 6, 1997 | Deposition |
| 94005 | 95-19339 | Sharon Phillips vs. Appliance Central Service, Inc. | NANCY LAKE CLARK, Attorney 4828 Loop Central Drive Suite 640 Houston, Texas 77081 | May 6, 1997 | Deposition |
| 94192 | G-97-253 | Lawrence Tucker vs. State Farm Insurance Group | WARREN TAYLOR, Attorney 1001 Fannin, # 600 Houston, Texas 77002 | Feb. 5, 1998 | Deposition |

| Magnifacts Case Number | Cause Number/Court | Style | Attorneys | Date | Type of Appearance |
|---|---|---|---|---|---|
| 94226 | 96-50575 270th District Court Harris County, Texas | Lennie Bryant vs. Entex | Cliff Vacek PFEIFFER & VACEK, LLP 10260 Westheimer #700 Houston, TX 77042 | 3/5/98 | Court Appearance (Witness) |
| 95014 | D-155,856 | Robert Rutherford, Rene Rutherford vs. Maytag Corporation and Conn Appliances, Inc., d/b/a Conn's | Paul J. Holmes HOLMES & JEFFREY, L.L.P. Suite # 230 550 Fannin P. O. Box 3746 Beaumont, TX 77704 | 8/27/98 | Deposition |
| 96056 | | Dunn vs. H L & P | Jeff Hoffman PFEIFFER & VACEK, LLP 10260 Westheimer #700 Houston, TX 77042 | 9/4/98 | Deposition |
| 97255V | Friendswood J. P. Court Suite # 30 607 South Friendswood Drive Friendswood, Texas | Tim Burr | Wade Williams LEWIS & WILLIAMS 2200 Market, Suite # 750 Galveston, Texas 77550 | 10/12/98 | Court Appearance |
| 98061C | | Cool Insulation | Bob Scheihing SMALL, CRAIG & WERKENTHIN 300 Convent St. # 1950 San Antonio, Texas 78205 | 12/11/98 | Deposition |
| 96263 | 98-08149 Griggs & Harrison, P.C. 1301 McKinney Suite 3200 Houston, Texas 77010-3033 | Comerica, Inc. | James LaRoe Office of JAMES K. LAROE 4515 Cole Avenue, 1400 Highland Park Dallas, Texas 75205 | 1/7/99 | Deposition |

| Magnifacts Case Number | Cause Number/Court | Style | Attorneys | Date | Type of Appearance |
|---|---|---|---|---|---|
| 98061C | 98-C1-05026 57th Court Bexar County, Texas | Elizabeth Trevino, Individually and as Next Friend of Daniel Trevino, Romulo Trevino, Ana Elizabeth, Tevino, Anna Mendoza vs. Distinctive Exteriors, Inc., d/b/a Michael Holub Custom Homes and Cool Insulation of San Antonio, Inc. | Ricardo Reyna BROCK & PERSON 10101 Reunion Plaza Suite 1000 San Antonio, Texas 78216 | 4/1/99 | Court Appearance (witness) |
| 98101C | H-98-4269 | Seacor Marine et al | Byron Wilson KILLEEN & FIERRO | 11/1/99 | Deposition |
| 96206 | H-9-167-245 | Gary W. Kirk and Pamela Kirk v. Entergy Services, Inc p/k/a Gulf States Utilities and Northland Comm., Inc. d/b/a Northland Cable – 172nd District Court, Jefferson County, Texas | Scott Krist KRIST LAW FIRM 17555 El Camino Road Houston, Texas 77058 | 1/17/00 | Deposition |
| 98213 | 8200913682 | Juan Portella | Jennifer Duncan COZEN & O'CONNOR 1717 Main St. 2300 Bank One Center Dallas, Texas 75201 | 12/11/00 | Deposition |

| Magnifacts Case Number | Cause Number/Court | Style | Attorneys | Date | Type of Appearance |
|---|---|---|---|---|---|
| 00097C | 43-E055-668 | Mitchell V. Fedders North America, Inc, et al 153rd Judicial District of Tarrant County, Texas | Julia Mann JENKINS & GILCHRIST 100 EST Houston St. 1400 Frost Bank Tower San Antonio, Texas 75205 | 1/24/01 | Deposition |
| 98115 | 2000-19368 | Church Mutual Insurance Co. as Subrogee of Greater Macedonia Baptist Church vs O & G Construction Co.; In the 234th Judicial District Court of Harris County, Texas | David Pomes GISSELL, BARKER & LYMAN 9090 Fannin 2700 Two Houston Houston, Texas 77010 | 4/09/01 | Mediation |
| 98226 | Claim Number 82-00-580547 Court Number 39.782 | David Lee McGarrahan vs. Parker Lumber Company, et al In the District Court of Hardin County, Texas 356th Judicial District | Bill Sebestia COZEN & O'CONNOR 1717 Main Street 2300 Bank One Center Dallas, Texas 75201 | 4/19/01 | Deposition |
| 97133C | FAC-1-82528 | Baroid/Dresser Industries | Bruce Rogers BROWN, HERMAN, DEAN, WISEMAN, LISER & HART 304 W. 7th St 200 Fort Worth Club Building Ft. Worth, Texas 76102 | 6/6/01 | Deposition |

| Magnifacts Case Number | Cause Number/Court | Style | Attorneys | Date | Type of Appearance |
|---|---|---|---|---|---|
| 99160 | 2000-48326 | Allstate Insurance Company as Subrogee of William Lilley vs. Home Town Concepts, Inc. d/b/a/ Huntington Custom Homes, In the 80th Judicial District Court of Harris County, Texas | W. Montgomery Brisco EGGLESTON & BRISCO | 8/21/01 | Deposition |
| 97137 | 109421 240th Judicial District, Fort Bend County, Texas | Pratt v. Ashton Wood Homes and Fort Bend Electrical | Jim Dendinger COZEN & O'CONNOR 1717 Main Street 2300 Bank One Center Dallas, Texas 75201 | 11/7/01 | Deposition |
| 99145 | 200-25840 & 99-483432 | Houston Foam Plastics vs. Control Concepts, Inc. & Adams, et al vs. Houston Foam Plastic, Control Concepts, Inc. and Los Angeles electric & Sign, Inc. | James K. La Roe Craig S. Douglass OFFICE OF JAMES K. LAROE 4515 Cole Avenue 1400 Highland Park Dallas, Texas 75205 | 11/29/01 | Deposition |

| Magnifacts Case Number | Cause Number/Court | Style | Attorneys | Date | Type of Appearance |
|---|---|---|---|---|---|
| 01148C | C-0637-01-G | Maria De La Luz Morales Alvarez v. Walmart Stores, Inc. and Broadway Hardware, 370th District Court, Hildago County Texas | Stephen Navarro BROCK & PERSON 1506 Bexar Crossing San Antonio, Texas 78232 | 12/28/01 | Deposition |
| 99145 | 200-25840 & 99-483432 | Houston Foam Plastics vs. Control Concepts, Inc. & Adams, et al vs. Houston Foam Plastic, Control Concepts, Inc. and Los Angeles electric & Sign, Inc. | James K. La Roe Craig S. Douglass OFFICE OF JAMES K. LAROE 4515 Cole Avenue 1400 Highland Park Dallas, Texas 75205 | 1/2/02 | Deposition |
| 01157C | | Paula Mallory et al vs. United Dominion Reality Trust & Towne Lake Apartments ; in the 190th Judicial District Court of Harris County, Texas | David Little Julie Antalffy CHRISTIAN & SMITH 2300 Fannin Suite 500 Houston, Texas 77062 | 1/24/02 | Deposition |
| 01148C | C-0637-01-G | Maria De La Luz Morales Alvarez v. Walmart Stores, Inc. and Broadway Hardware, 370th District Court, Hildago County Texas | Stephen Navarro BROCK & PERSON 1506 Bexar Crossing San Antonio, Texas 78232 | 1/28/02 | Trial |

| Magnifacts Case Number | Cause Number/Court | Style | Attorneys | Date | Type of Appearance |
|---|---|---|---|---|---|
| 01225 | Steve Black 885-964 | 248th District Court, 5th Floor, Harris County Criminal Courthouse 301 San Jacinto | | 2/11/02 | Court Appearance |
| 01226 | Steve Black 885-964 | 248th District Court, 5th Floor, Harris County Criminal Courthouse 301 San Jacinto | | 2/11/02 | Court Appearance |
| 98226 | Claim Number 82-00-580547 Court Number 39.782 | David Lee McGarrahan vs. Parker Lumber Company, et al In the District Court of Hardin County, Texas 356th Judicial District | Bill Sebestia COZEN & O'CONNOR 1717 Main Street 2300 Bank One Center Dallas, Texas 75201 | 3/12/02 | Mediation |
| 98226 | Claim Number 82-00-580547 Court Number 39.782 | David Lee McGarrahan vs. Parker Lumber Company, et al In the District Court of Hardin County, Texas 356th Judicial District | Bill Sebestia COZEN & O'CONNOR 1717 Main Street 2300 Bank One Center Dallas, Texas 75201 | 4/15/02 | Court Appearance |
| 02107C | Claim Number 24T-10480-054 | Michale Kubala 22507 Poppy Field Katy, Texas 77450 | Craig Von Sternberg WHITTINGTON VON STERNBERG 2600 South Gessner Suite 600 Houston, Texas 77063 | 5/10/02 | Deposition |

| Magnifacts Case Number | Cause Number/Court | Style | Attorneys | Date | Type of Appearance |
|---|---|---|---|---|---|
| 01194C | Claim Number 8201566174X RB | Cynthia Robinson 3210 Ogden Beaumont, Texas 77705 | Les Little Mark Kerstein BUCK, KEENAN & GAGE 7000 Louisiana Suite 500 Houston, Texas 77052 | 6/13/02 6/14/02 6/17/02 6/18/02 | Deposition |
| 02069C | Claim Number 71X-8409 Cause Number B-CJ-2002-020 | Lydia Mae Cloud vs Davis Oil, Inc., et al, Creek County District Court | Francis Patton PIERCE, COUCH, HENDERSON P.O. BOX 26350 Oklahoma City, Oklahoma 73126 | 10/16/02 | Deposition |
| 01061 | Claim Number 1M010058 Cause Number 2002-17164 | Vinod and Ilaben Patel Vs Premier A/C & Heating Co. In the 113th Judicial District Court of Harris County, Texas | Marc J. Wojciechowki WOJCIECHOWSKI & ASSOCIATES, P.C. 2 Northpoint Drive Suite 725 Houston, Texas 77060 | 12/19/02 | Deposition |
| 02083C | Cause Number 63966 | Tommy Suits and Betty R. Burns Vs Yorktown International, Inc. In the District Court 196th Judicial District Court of Hurst County, Texas | Gina Acosta HERMES, SARGENT & BATES | 4/28/03 | Deposition |
| 99054 | Claim Number 09-08164 Cause Number 747 689 | NAS Corporation v. Omega Financial Merchants Services et al: Vs . In the County Court at Law No. 4, Harris County, Texas | Joseph Garrett SHEEHY, SERPE & WARE 909 Fannin Street 2500 Two Houston Houston, Texas 77010 | 6/2303 | Trial |

| Magnifacts Case Number | Cause Number/Court | Style | Attorneys | Date | Type of Appearance |
|---|---|---|---|---|---|
| 00149C | File Number: 430-478 & 739-129 Cause Number: 2001-C1-15804 | Diana Ryan v. The Ryland Group, Inc., J. L. Maupin Enterprises, Inc. d/b/a King Electric and Scott Felder Homes 57th Judicial District Court of Bexar County, Texas | Audrey Haake BROCK & PERSON 1506 Bexar Crossing San Antonio, Texas 78232 | 7/30/03 | Deposition |
| 02086C | Cause Number: 2002-36542 | Pallet Recycle of Texas, Inc. and Ray H. Ahlgren vs. Union Pacific Railroad Corporation, et al; in the 333rd Judicial District Court of Harris County, Texas | Mainess Gibson GIBSON & ASSOCIATES 8588 Katy Freeway Suite 350 Houston, Texas 77026 | 8/25/03 | Deposition |
| 02069C | Claim Number 71X-8409 Cause Number B-CJ-2002-020 | Lydia Mai Cloud vs. Davis Oil, Inc. et al, Creek County District Court, Oklahoma | Frances Patton PIERCE, COUCH & ASSOCIATES P.O. Box 26350 Oklahoma City, Oklahoma 73126 | 9/17/03 | Deposition |

| Magnifacts Case Number | Cause Number/Court | Style | Attorneys | Date | Type of Appearance |
|---|---|---|---|---|---|
| 00150C | Cause Number: 001016048-CV | Violetter D. Davis, Individually a/n/f/ Amelia McGee and DeMarcus McGee and Marcus McGee and Mathis Ottea III, v. Te-Jo's Drive In, Harold's Drive In, Ahmad Mohmmad Khairallah and Abdullah Mohmmad Khairallah | Gary Fuller PLUNKETT & GIBSON | 9/29/03 | Deposition of J. R. Craddock |
| 01159 | Cause Number: 2002-16531 | Phoenix Cleaners v. Tom Burke d/b/a/ TE Burke Construction, Harris County, Electric, Inc. and Independent Steel Erectors, Inc. In the District Court of Harris County, Texas 333rd Judicial District | CLOUSE, DUNN, HIRSH 2200 Ross Avenue Suite 4900 W. Dallas, Texas 75201 | 12/9/03 | Deposition |
| 03009C | Cause Number: 153-189941-01 | John Chilton & Karen Chilton v. Air Rite Air Conditioning Co. | Randy Hall LAW OFFICE OF RANDY HALL 1550 Norwood Suite 103 Hurst, Texas 76054 | 5/20/04 | Deposition |

| Magnifacts Case Number | Cause Number/Court | Style | Attorneys | Date | Type of Appearance |
|---|---|---|---|---|---|
| 01203C | File Number: 11013.001 Cause Number: 2002CVQ00010 3D2 Webb County, Texas) | Guillermo Oliva, Jr. and Maria Del Rosario Arenas, Formerly known as Maria Del Rosario Oliva Vs. Armadillo Construction Company, Inc. | Stephen A. Katz SHADDOX, COMPERE, WAVERLY & GOOD P.C. The North Frost Center 1250 N.E. Loop 410 Suite 725 San Antonio, Texas 78209 | 6/15/04 | Deposition |
| 01203C | File Number: 11013.001 Cause Number: 2002CVQ00010 3D2 (Webb County, Texas) | Guillermo Oliva, Jr. and Maria Del Rosario Arenas, Formerly known as Maria Del Rosario Oliva Vs. Armadillo Construction Company, Inc. | Stephen A. Katz SHADDOX, COMPERE, WAVERLY & GOOD P.C. The North Frost Center 1250 N.E. Loop 410 Suite 725 San Antonio, Texas 78209 | 6/28/04 | Arbitration |
| 01203C | File Number: 11013.001 Cause Number: 2002CVQ00010 3D2 (Webb County, Texas) | Guillermo Oliva, Jr. and Maria Del Rosario Arenas, Formerly known as Maria Del Rosario Oliva Vs. Armadillo Construction Company, Inc. | Stephen A. Katz SHADDOX, COMPERE, WAVERLY & GOOD P.C. The North Frost Center 1250 N.E. Loop 410 Suite 725 San Antonio, Texas 78209 | 6/20/04 | Arbitration |
| 03098C | File Number: 03124 Cause Number: C-10077-03-F | L.G. Electronics, USA, Inc. v. Monica Ibarra | David Crago BRIN & BRIN P.C. 1202 Third Street Corpus Christie, Texas 78404 | 8/23/04 | Deposition |
| 03098C | File Number: 03124 Cause Number: C-10077-03-F | L.G. Electronics, USA, Inc. v. Monica Ibarra | David Crago BRIN & BRIN P.C. 1202 Third Street Corpus Christie, Texas 78404 | 10/28/04 | Trial |

| Magnifacts Case Number | Cause Number/Court | Style | Attorneys | Date | Type of Appearance |
|---|---|---|---|---|---|
| 03098C | File Number: 03124 Cause Number: C-10077-03-F | L.G. Electronics, USA, Inc. v. Monica Ibara | David Crago BRIN & BRIN P.C. 1202 Third Street Corpus Christie, Texas 78404 | 10/29/04 | Court Appearance |
| 99221 | File Number: 53-Q-114-723 Cause Number: 01CV1080 | Richard Daugird Galveston, Texas<br><br>State Farm Mutual Auto Insurance Co. as Subrogee of Richard T. Daugird v. Schumacher Electric Corp. in the 122nd Judicial District of Galveston County | Mike Warren FRANK RIVAS & ASSOCIATES JP Morgan Chase Bank Building 700 Lavaca Suite 1100 Austin, Texas 78701 | 4/18/05 | Trial |
| 02182 | File Number:<br><br>Cause Number: B-0172045 Claim Number: G100200531-63B0011 | Client: Conns Appliance, Inc. Farmers Insurance Exchange, et al v. Conn's Applaince, Inc. and Friedrich Air Conditioning Co. LTD: In the 60th Judicial District of Jefferson County, Texas | Randal Cashiola CHAMBERS, TEMPLETON, CASHOLIA 7 THOMAS, LLP 2090 Broadway Beaumont, Texas 77701 | 6/17/05 | Deposition |

| Magnifacts Case Number | Cause Number/Court | Style | Attorneys | Date | Type of Appearance |
|---|---|---|---|---|---|
| 03084 | File Number: 500-0007 Travelers Claim Number: LA12212 Cause Number: 2004-55390 | Travelers Indemnity Co. v. Ford Motor Co. | W. Ransom Pipes HANNA, COLVIN & PIPES LLP ATTORNEYS AT LAW 2051 Silverside Drive, Suite 260 Baton Rouge, Louisiana 70808 @ Offices of Callier and Garza 4900 Woodway Suite 700 Houston, Texas | 6/27/05 | Deposition |
| 04104V | GAIC Claim # 571-530072 Cause Number: H-04-2918 | M.Hanna Construction, Inc. v. Caterpillar Inc. U.S. District Court for the South District of Texas-Houston Division | Wendell Sheperd, Sr. THE SHEPERD LAW FIRM P.O. Box 16099 Sugar Land, Texas 77496-6099 @ the Offices of Womble, Cottellesse & Howell 1814 Memorial Drive Houston, Texas 77007-8303 | 7/29/05 | Deposition |
| 01241 | IAS Claim Number: 38880736 Cozen O'Connor File Number: 119596.00 | Pathway to Learning | Lawrence Bowman, Jason Schulz COZEN O'CONNOR LAW FIRM 1 Houston Center 1221 McKinney Suite 2900 Houston, Texas 77010 | 9/7/05 | Deposition |
| 00052 | Claim Number: 478FRAYQ2023P | Clover and Walters | Stephanie Tyler LAW OFFICE OF SAMUEL E. DUNN, 10850 Richmond Avenue, Suite 200 Houston, Texas 77042 | 9/20/05 | Deposition |

| Magnifacts Case Number | Cause Number/Court | Style | Attorneys | Date | Type of Appearance |
|---|---|---|---|---|---|
| 02202 | Travelers Insured: West Houston Airport Corporation Claim Number 478-ARF-5591 Cause Number: 2002-275-82 | Volume Millwork, Inc., Carolyn Lesikar Moon, vs. West Houston Airport Corporation, Woodrow V. Lesikar Family Trust and Woody K. Lesikar, in the 151st Judicial District Court of Harris County, Texas | Hal Hargis IRELAN & HARGIS 4400 Louisiana, Suite 1800, Houston, Texas 77002 | 10/17/05 | Deposition |
| 04131 | AAA Texas Insured: Charles Russell Claim Number 1352610Martin, Disiere, Wisdom Cause Number: 2005-19706 | Charles D. Russell v. Interinsurance Exchange of the Auto Club and Vanessa Chapa,: In the 80th Judicial District Court of Harris County, Texas | Jamie P. Cooper MARTIN, DISIERE, JEFFERSON & WISDOM L.L.P. 808 Travis, Suite 1800, Houston, Texas 77002 | 4/21/06 | Deposition |

*From the desk of*
*Johnny Thornton*

*September 14, 2012*

~ 2 ~

## AGREEMENT AND SCHEDULE OF CHARGES

- **Johnny Thornton** agrees to provide for our client, professional services in a cost-conscious, professional manner.

- The consulting services will be billed at appropriate intervals during project review and/or report preparation. All assignments will be promptly carried out, and upon request, a written report furnished to the requestor. The requestor shall notify if no written report is desired.

- The fee for all investigations will be at a rate of $150.00 per hour plus any expenses incurred.

Should you desire any additional information, contact me at your convenience.

Respectfully,
Johnny Thornton
jt@magnifacts.com
713.858.5299

*Providing our client with timely and reliable data based on training and experience, since 1966.*