UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

INTERNATIONAL PAPER CO., ET AL     CIVIL ACTION NO. 11-cv-0017

VERSUS

DEEP SOUTH EQUIPMENT CO., ET AL     MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

**Introduction**

International Paper ("IP") operates a paper mill near Mansfield, Louisiana. It leased a warehouse in nearby Red River Parish to store used paper and corrugated containers that would be used as feedstock. Tango Transport ("Tango") operated the warehouse for IP.

Tango rented a lift truck from Deep South Equipment Company ("Deep South") to use in the warehouse. The truck was built by NACCO Materials Handling Group, Inc. ("NACCO"). Several days after the truck arrived at the warehouse, it was parked in an area lit by a high-intensity light made by Sylvania. An employee smelled smoke and discovered that a fire had broken out near the truck. The warehouse was destroyed.

IP had an insurance policy from Factory Mutual Insurance Company ("FM"). The insurer paid IP for its losses, including the cost of demolition and rebuilding the warehouse. IP and FM ("Plaintiffs") then filed this complaint against Deep South, NACCO, and Sylvania. They alleged that the only potential sources of ignition of the fire were the truck

and the light. Before the court are a four motions for summary judgment filed by Deep South and NACCO .

**Summary Judgment Burdens**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a).  A fact is "material" if it might affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986).  A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party.  Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact.  Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Deep South's Motion for Summary Judgment (Doc. 133)**

Plaintiffs originally alleged that Sylvania, the manufacturer of a metal halide lamp used in the warehouse, may have been responsible for the fire.  Plaintiffs' experts collected and examined two lamps near the area of origin, and they were identified as E-10 and E-11. Sylvania filed a motion for summary judgment and argued that Plaintiffs did not have

sufficient evidence from which a reasonable juror could conclude that its light was the proximate cause of the damages. Sylvania argued that the lightbulb in the area of origin was destroyed so it could not be examined for evidence of defects, and Plaintiffs could not otherwise establish a defect at trial. Sylvania pointed out that IP had conceded in response to a request for admissions that discovery had produced evidence that appeared to negate the assertion that a lamp-related fire was a viable theory. Plaintiffs did not file opposition to the motion. The court granted summary judgment for Sylvania and dismissed it from the case.

The requests for admissions were served by Sylvania on IP. They asked that IP admit that neither it nor its insurer could identify the metal halide lamp that they alleged in the complaint was a cause of the fire. The request asked for some other admissions about the lamp. IP responded to each of them as follows:

> Plaintiff's initial investigation initially supported the conclusion that a lamp-related fire was one viable alternative theory as to the cause of the fire; however, subsequent discovery has produced evidence that appears to have negated that assertion. Further, the lamp located in the area of origin was not collected or retained as evidence.

Forest Smith, an expert for Plaintiffs, stated in his report that he examined evidence including the remains of a metal halide lighting fixture and lamp found on the floor near the right front tire of the forklift. He expressed an opinion that the cause of the fire was not due to any electrical failure or malfunction of the lighting fixture and lamp located above the forklift. Mr. Smith later issued a supplemental report in which he discussed the lighting issues in more detail and again opined that the available evidence was sufficient to a

reasonable degree of engineering certainty to eliminate the lighting fixture and lamp located above the forklift as a potential cause of the event.

Deep South argues that Mr. Smith examined the lighting fixture and lamp designated as item E-ll, did not mention in his reports item E-10, and could not have examined what Deep South contends is a third (missing) light fixture. Mr. Smith backs his report with an affidavit in which he stated that both items E-10 and E-11 exhibit similar appearances that indicate they both sustained damage in the fire but did not fail in such a manner as to cause the fire. Plaintiffs contend that Deep South's argument for the existence of a third missing lamp is based on inartful language in the record and that "there is not a third metal halide lamp which was or was not analyzed."

Plaintiff stated in a discovery admission that the lamp located in the area of origin was not collected or retained as evidence, but there is other evidence in the record that light fixtures in the area were preserved and examined. There may be some inconsistencies in the record, but the court is not comfortable in finding that there is no genuine issue as to whether there was a third light fixture, of more relevance than E-10 and E-11, that was not examined.

More important, Deep South's motion is based on the narrow argument that it is entitled to summary judgment because Plaintiffs cannot establish that the alleged missing lamp is ruled out as a cause of the fire. Deep South contends that it is entitled to summary judgment so long as there is evidence of an alternate potential source of ignition if the evidence of that alternate source is not available for examination. Deep South does not cite any Louisiana jurisprudence to back this argument.

Deep South cites in support only two cases from other jurisdictions. The first, <u>Howells v. General Electric Co.</u>, 2013 WL 419244 (D. Nev. 2013), involved a claim that a defective microwave oven caused a kitchen fire. The homeowners did not see the fire start, but they did see flames in a microwave oven mounted above a stove. The homeowners had no expert to identify the cause of the fire or to suggest the microwave suffered from a defect. The evidence permitted only an inference that the fire originated in the cooking area of the kitchen. The court granted summary judgment for the manufacturer of the microwave. Deep South overstates the holding of this case as granting summary judgment because the stove could not be ruled out as a cause. That factor was mentioned, but there is no indication that the mere possibility that the stove was the source was alone sufficient to warrant summary judgment for the maker of the microwave.

Deep South also cites <u>Kozar v. Sharp Electronics Corp.</u>, 2005 WL 2456227 (W.D. Pa. 2005) in which the court granted a <u>Daubert</u> challenge to an expert opinion based on the process of elimination theory to determine the cause of a fire; there was a television power cord that had not been recovered and analyzed. The decision might be of benefit if this were a <u>Daubert</u> challenge to the methodology used, but it is not. <u>Kozar</u> did not address the summary judgment issue at hand in this case.

Deep South's motion is based on a contention that there is a missing lamp or lighting fixture that is a potential source of the fire that was not collected and preserved. There is an indication of that in the discovery responses, but the other facts in the record cast doubt on whether that is actually the case. Deep South has also not shown that the burden on Plaintiffs

under Louisiana law warrants summary judgment based on the mere existence of an alternate potential cause of the fire that cannot be examined. For these reasons, Deep South's Motion for Summary Judgment (Doc. 133) will be denied.

Deep South argued in a supplemental memorandum (Doc. 196) that Plaintiffs' claims should be dismissed because they no longer have an expert who can opine as to the origin of the fire. That is a much broader and different argument than presented in the original motion and the other briefs. It is not appropriate to consider an argument raised for the first time in a reply brief or other point in the briefing when the opponent was not allowed an adequate opportunity to respond. Vais Arms, Inc. v. Vais, 383 F.3d 287, 292 (5th Cir. 2004). Deep South did not raise this argument until the sixth and final brief related to this motion, so it will not be considered.

**NACCO's Motion for Summary Judgment (Doc. 129)**

Plaintiffs' complaint sets forth a number of theories of liability against NACCO, the manufacturer of the truck. One of them was a claim under the Louisiana Products Liability Act that NACCO should have warned Deep South (the distributor) that the truck was unsafe for use in paper handling service because, among other reasons, loose paper could be drawn into the engine compartment and brought into contact with exhaust components.

Plaintiffs retained John Howard as a human factors expert to testify in support of their failure to warn claim. Howard opined that, although NACCO does recommend the use of a paper package when a lift truck will be operated in the paper industry, NACCO's warning information system was not emphatic enough to impress upon Deep South the need to

impress upon end users the importance of using the paper package. NACCO contends in its motion for summary judgment that this is now the sole claim that Plaintiffs present against NACCO. Plaintiffs have not contested that assertion in their briefs.

After NACCO filed its motion for summary judgment, the court granted NACCO's motion to preclude the testimony of Mr. Howard regarding NACCO's duty to warn. The court stated that Howard could testify regarding the communications between Deep South and the end user (because Deep South had not filed a timely Daubert challenge to Howard's opinions), but Howard could not offer opinions regarding the adequacy of NACCO's warnings to Deep South. Doc. 182.

NAACO seeks summary judgment on the grounds that (1) Deep South was a sophisticated user to whom NACCO did not owe a duty to warn and (2) the warning NACCO provided was adequate. With regard to the first argument, a manufacturer has no duty under Louisiana law to warn a sophisticated purchaser. "Louisiana does not hold the manufacturer as compelled to warn sophisticated purchasers of dangers of which the buyer either knows or should be aware." Davis v. Avondale Indus., Inc., 975 F.2d 169, 172 (5th Cir. 1992). As for the adequacy of a warning, it is ordinarily a question for the trier of fact, but summary judgment is appropriate if a plaintiff has presented no expert testimony or other evidence to support his claim. Jack v. Alberto-Culver USA, Inc., 949 So.2d 1256, 1259 (La. 2007); Ricks v. City of Alexandria, 2014 WL 4274144, *5 (W.D. La. 2014).

NAACO does not sell directly to end users. It offers to the dealers that purchase its trucks an optional paper package that can be used when a truck is operated in a paper

environment. The package includes items such as a vented hood and muffler wraps that help reduce the accumulation of paper debris near hot components. The court noted in its prior ruling (Doc. 182) that the appropriate ANSI standard does not mandate that paper package type add-ons be standard equipment on all lift trucks, and OSHA places the responsibility on the end user to determine the appropriate equipment for the work environment.

The evidence shows that NACCO issued a number of product information bulletins to its dealers regarding a paper applications kit. The bulletins stated that the kits were for use where loose paper product material is present at floor level, and dealers were encouraged to add the option to trucks going into any paper industry application where waste scraps were present. The bulletins stated that the kits would reduce the potential for fire by limiting the contact of paper scraps with hot surfaces. Plaintiffs and Deep South complain that four of the eight bulletins provided by NACCO to Deep South did not specifically address the risk of fire, and they complain that Deep South was not provided a SPED study conducted by NACCO regarding the movement and accumulation of paper in the engine compartment of the lift truck operated in a paper environment.

Deep South is the authorized dealer of NACCO lift trucks in this area, with eight offices and thousands of customers in Louisiana, Mississippi, Texas, and Oklahoma. It states on its website that its salesmen and technicians are experts in dealing with the truck at issue. General Sales Manager Lindsey Hernandez, who handled this rental, had over two decades of experience selling lift trucks in various environments. Hernandez testified at a deposition that Hyster/NACCO recommends a paper application kit on a lift truck to be operated in

paper-handling services. Hernandez said the purpose of the recommendation was to keep paper from getting on the hot surfaces and acknowledged that a paper kit was recommended "on any truck going into an application like Tango."

The uncontested evidence is that Deep South was about as sophisticated a purchaser of the lift truck as one could find. NACCO provided a number of recommendations to Deep South that a paper kit be used in a paper environment, and some of the bulletins stated the rather obvious reason for the kit, which was to reduce the risk of fire. The very experienced manager who handled this particular transaction was aware of the kits, the reason for their existence, and that they were recommended in the environment at issue. Plaintiffs have no expert testimony or any other particular evidence, beyond the bulletins themselves, to support their claims that the warnings were inadequate.

NACCO has shown that there is no genuine issue that Deep South was a sophisticated purchaser who knew of the danger, so NACCO had no duty under Louisiana law to warn Deep South about this issue. Furthermore, the warnings that were given were straightforward, common sense, and more than adequate. The complaints by Plaintiffs that Deep South was not also provided the SPED report do not give rise to a genuine issue of material fact. That report was the underlying engineering document that described the testing that led to the resulting warning that the paper package be used in a paper environment. There is no indication from the testimony of Manager Hernandez or otherwise that the result would have been any different had NACCO provided Deep South the SPED report along with the bulletins about which Hernandez was already aware but chose to disregard. <u>See</u>

Bloxom, 512 So.2d at 850 (additional warning would have been futile when consumer admitted he never read the manual). Accordingly, NACCO's Motion for Summary Judgment (Doc. 129) will be granted, and all remaining claims against NACCO dismissed with prejudice.

**Deep South's Motion for Summary Judgment on the Rekindle Issue (Doc. 120)**

Plaintiffs alleged in their complaint that a fire broke out in the vicinity of the truck and light on January 7, 2010. Plaintiffs alleged that, three weeks later, hot ashes from the original fire reignited the fire and destroyed bales of used paper and a corrugated container that were stacked to the north of the destroyed warehouse. FM allegedly made payment to IP for its losses from both the original and second fire. Complaint, ¶¶ 13-16.

Plaintiffs retained Johnny Thornton as their expert on the origin and cause of the fire. Thornton issued his expert report in which he analyzed information and offered an opinion that the original fire was caused by an ignition of paper products that were in close proximity to the unprotected exhaust manifold of the lift truck. He also opined that the second fire was caused by a rekindling of the original fire. He stated that his opinion regarding the second fire was "based on the same methodology as stated within this report."

Deep South moves for summary judgment prohibiting Plaintiffs from recovering any damages caused by the second fire. It argues that the second fire cannot be attributed to its truck, which had already been destroyed. Deep South argues that Thornton's opinion linking the second fire to the original fire is unfounded and subject to a Daubert challenge, and that Plaintiffs do not have any other evidence to prove that the second fire was caused by the first.

Plaintiffs responded (Doc. 156) by relying on Thornton's report and an affidavit he offered to back his report. He testified about personal observations at the scene and repeated his conclusion that the second fire was a rekindle of the first, which had never been extinguished. Plaintiffs did not point to any other witnesses or evidence they could present to support their contention that the second fire was related.

After the summary judgment briefs were filed, the court addressed several <u>Daubert</u> challenges including one to the testimony of Johnny Thornton. Defendants argued that Thornton's opinions were based on inadequate facts and data, not the result of reliable application of principles and methods to the fact, and were per se defective under the applicable standards of NFPA 921. The court noted that Thornton was no longer licensed in Texas and had never been licensed in Louisiana. He had not maintained his certification in the relevant area, and his deposition testimony showed that he was not knowledgeable about the current version of NFPA 921, which he purported to rely upon to form his opinion. For those reasons, the <u>Daubert</u> motion that challenged Thornton's opinions as an expert was granted. Doc. 182.

Deep South's current motion squarely challenged Plaintiffs' ability to present evidence that the second fire was a rekindle of the first (and therefore possibly caused by the truck). Plaintiffs responded by offering the opinion of Thornton, which has now been found inadmissible. There might be other acceptable forms of evidence on the issue, but Plaintiffs did not shoulder their summary judgment burden by pointing to any other admissible evidence that might demonstrate a genuine dispute of fact on this point. Deep South met its

summary judgment burden by challenging Plaintiffs to point to admissible evidence on this issue, and Plaintiffs did not meet that challenge. Deep South is, therefore, entitled to summary judgment dismissing all claims for damages based on the second fire.

**Deep South's Motion for Summary Judgment; Depreciation of Sprinkler System (Doc. 131)**

When the warehouse was built in about 2000 there was no requirement that a building of its purpose have a sprinkler system. Louisiana adopted a new code in 2007 and required that a new structure built for the same purpose as the warehouse must have a sprinkler system. IP's warehouse was grandfathered so that the owner was not required to upgrade to a sprinkler system as long as the building was not modified.

The fire and the required replacement of the building mandated that the new building meet the requirements of the new code. Plaintiffs' experts estimated the replacement cost of the warehouse at approximately $4,100,000, of which $1,017,500 is attributed to the sprinkler system required by the code upgrade.

Earlier motion practice resulted in a ruling (Doc. 115) regarding (1) whether Plaintiffs should be allowed to recover the cost of the sprinkler system and (2) whether recovery of the cost of rebuilding the warehouse must be reduced to reflect depreciation. The court employed the damages principles set forth in Roman Catholic Church of Archdiocese of New Orleans v. Louisiana Gas Service Co., 618 So.2d 874, 876 (La. 1993). Courts have stated different tests, such as fair market value before property damage, or cost of replacement less depreciation, but Roman Catholic Church admonished "no mechanical rule can be applied

with exactitude in the assessment of property damage under Article 2315 and that every case must rest upon its own facts and circumstances." Id. at 877. The Court set forth flexible guides, rather than arbitrary formulae, to foster the goals of the Civil Code of compensating a victim to the full extent of his loss and restoring him to as good a position as he held before the damage. Id. at 879-80.

This court applied those rules and determined that a jury, given a proper showing by Plaintiffs, could award damages for the cost of the fire sprinkler code upgrades. With respect to the replacement of the building itself, the court held that the movants had satisfied their summary judgment burden that any award for replacement of the warehouse must reflect the expert's estimate of $812,398 in depreciation of the building. Otherwise, Plaintiffs would receive the windfall of a brand new building to replace one that was several years old.

Deep South now asks the court to grant it summary judgment by holding that any award for the cost of the sprinkler system must also be reduced to reflect depreciation. The motion cites no authority other than the court's prior ruling. The court finds that Deep South has not established that it is entitled to summary judgment on this issue. The damage assessment is different with respect to the sprinkler system because it is the installation of a entirely new system that was allegedly required because of the fault of the defendants. There was no earlier, aged sprinkler system that was replaced with a new system that would be expected to have a greater life. Accordingly, the principles that warrant the consideration of depreciation in valuing the loss of the warehouse do not apply equally to the cost of

installing the newly mandated sprinkler system. Accordingly, Deep South's Motion for Summary Judgment on Depreciation of Sprinkler System (Doc. 131) will be denied.

**Conclusion**

For the reasons set forth above, Deep South's Motion for Summary Judgment (Doc. 133) and Motion for Summary Judgment on Depreciation of Sprinkler System (Doc. 131) are denied. Deep South's Motion for Summary Judgment on the Rekindle Issue (Doc. 120) is granted; Plaintiffs' claims for damages caused by the second fire are dismissed. NACCO's Motion for Summary Judgment (Doc. 129) is granted; all of Plaintiffs' remaining claims against NACCO are dismissed with prejudice.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 19th day of March, 2015.

Mark L. Hornsby
U.S. Magistrate Judge