IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| INTERNATIONAL PAPER COMPANY | * CIVIL ACTION NO. 11-CV-00017 |
| and FACTORY MUTUAL INSURANCE | * |
| COMPANY | * |
| | * |
| VERSUS | * JUDGE STAGG |
| | * |
| DEEP SOUTH EQUIPMENT COMPANY, | * |
| NACCO MATERIALS HANDLING | * |
| GROUP, INC., OSRAM SYLVANIA, | * MAGISTRATE JUDGE HORNSBY |
| INC., ET AL | * |

**************************************************************************

## DEEP SOUTH EQUIPMENT COMPANY'S OPPOSITION
## TO PLAINTIFFS' MOTION *IN LIMINE*

**MAY IT PLEASE THE COURT;**

Defendant, DEEP SOUTH EQUIPMENT COMPANY ("DEEP SOUTH"), who submits

this memorandum in opposition to International Paper Company and Factory Mutual Insurance

Company's Motion *in Limine* [Doc. 206 and Doc. 228], respectfully submits the following:

## GENERAL OBJECTION

Defendant objects to Plaintiffs' Motions *in Limine* as the vast majority of same lack any

specificity or context to allow defendant to evaluate and oppose the motions.  As such,

Defendant submits that Plaintiffs' Motions *in Limine* be denied, and the issues be addressed if

and when they arise at trial of the matter.

In Opposition to Plaintiff's Motion *in Limine* **No. 5**, Defendant's expert witnesses, Eric

Benstock, Dan Arnold, Tony Echols, Jeff Warren and Matt Watson, were timely identified and

their expert reports produced timely.  Defendant has identified two expert witnesses who will be

called as fact witnesses.

In Opposition to Plaintiff's Motion *in Limine* **No. 6**.  Plaintiffs' motion is too broad and too sweeping.  As noted in *Pioneer Natural Resources USA, Inc., et al v. Diamond Offshore Drilling, Inc., et al*, 2009 WL 23588 (E.D.La.)[1], an attempt to exclude expert testimony that is unsupported by Admissible Facts sweeps too broadly.  As the court in *Pioneer* noted, counsel can object at the time of the trial if the testimony is offered without any basis in fact and not helpful to the court.  As such, a broad request like this should be denied, and counsel for plaintiffs can object at trial, if and when the scenario comes up.

In Opposition to Plaintiff's Motion *in Limine* **No. 7**.  Plaintiffs' motion is too broad. Plaintiffs cited *Thudium v. Allied Prods. Corp.*, 36 F.3d 767, 769-70 (8th Cir. 1994)[2] in their Motion [206] for their support.  However, in reviewing the *Thudium* decision, it does not say what plaintiffs indicate that the case stands for.  *Thudium* involved a products liability claim against Allied, the manufacturer of an auger, and Fulton, the manufacturer of the auger's winch. The plaintiff's expert, Creighton, testified that absent defects in the auger, the auger would not have collapsed and injured the plaintiff.[3]  In the defendant's Motion *in Limine*, they moved to exclude Creighton's testimony because he had altered his testimony beyond the deadlines.  The District Court excluded that portion of the testimony.  On appeal, the appellants argued that all of Creighton's testimony should have been excluded.  The Court of Appeals declined to exclude that. The Court went on to hold that the "opinion testimony was rather a logical inference drawn from the previous recital…"[4]  Accordingly, this motion should be denied.

In Opposition to Plaintiff's Motion *in Limine* **No. 8**, Defendant objects and opposes plaintiffs' motion as being too broad and sweeping.  Plaintiffs cite *Life Care Ctrs. Of Am., Inc. v.*

---

[1] Pioneer Natural Resources USA, Inc., et al v. Diamond Offshore Drilling, Inc., et al, 2009 WL 23588 (E.D.La.)
[2] Thudium v. Allied Prods. Corp., 36 F.3d 767, 769-70 (8th Cir. 1994)
[3] Id at 769
[4] Id at 770

*Charles Town Assocs. L.P.*, 79 F.3d 496, 507-508 (6th Cir. 1996)[5] for the proposition that evidence, statements and arguments not contained in the final pre-trial order should be excluded. *Life Care Ctrs of Am.* does not stand for this proposition.  If fact, the Court in *Life Care Ctrs of Am.* noted that the district court's exclusion of the defendant's defense since it was not specifically listed in the final pre-trial order was "unjust".[6]  If the plaintiffs knew of witnesses, evidence, photos, videos are evidence, and it is not specifically listed, then there is no prejudicial harm.  Therefore, this motion should be denied.

In Opposition to Plaintiff's Motion *in Limine* **No. 9**, defendant notes that plaintiffs do not cite to any testimony in support of their assertion that there was a "layer of paper on the floor".  Regardless, the purposes of the video in question is to illustrate how the forks of the lift truck can easily drag on the concrete floor, and how sparks may be emitted when this occurs.  The fact that this can occur is not disputed by plaintiffs.   The Court in *Hinkle*, cited by plaintiffs, affirmed the trial court's decision to admit the videotape evidence.  The issue was whether the video was meant to be a "recreation" of the event, or an "illustration," and a cautionary instruction was given to the jury.  As in *Hinkle*, in the instant matter, this videotape is for illustrative purposes to assist the jury.  There is no prejudice to plaintiffs; to the extent there is any prejudice, the probative value far outweighs same.

In Opposition to Plaintiffs' Motions *in Limine* **No. 10 and 11**, Plaintiffs' motions are too broad as they would encompass evidence in which plaintiffs did not file discovery on.  If the evidence was produced or discussed in depositions, motions or plaintiffs knew of the evidence, then there is no reason to preclude its introduction.  Defendant has identified two expert witnesses, Keith DeLorenzo and David H. Smith, that it intends to call as fact witnesses.  Plaintiffs knew of each witness, and plaintiffs took the deposition of Mr. DeLorenzo.  All

---

[5] Life Care Ctrs. Of Am., Inc. v. Charles Town Assocs. L.P., 79 F.3d 496, 507-508 (6th Cir. 1996)
[6] Id at 508

evidence has been identified in the Witness and Exhibit List that have been exchanged by the parties.  Therefore, these two motions should be denied.

In Opposition to Plaintiffs' Motion *in Limine* **No. 13**, Plaintiffs seek to preclude such testimony from the parties' former employees, including but not limited to those of Tango, Defendant opposes said motion as Plaintiffs offer no support for such a privilege and if the client and former client waives any purported privilege that may have existed.

Defendant opposes Plaintiffs' Motion *in Limine* **No. 15**.  Under Rule 406, it is recognized that proof of someone's habit can be admitted into evidence to prove a fact.  Here, the issue is whether Tango's habit of pushing bales should be admitted.  First, it is important to note that Oren Ruth, a former IP employee, testified that Tango did in fact push bales. Ruth knew that white baled paper was being used to push, and he knew that this was a risk for fire, and Ruth told Jeff Gates that they should not be pushing bales.[7] Despite this admonition by Ruth, Cleo Wilson testified that on the night of the fire that Greg Charles has pushed a bale of paper up next to the left side of his lift truck, and there was evidence of a scrub mark from the paper being pushed. Under Rule 401 and 406, this testimony is relevant is evidence to support actual pushing events and evidence of practice by Tango.  Accordingly, this motion should be denied.

Defendant opposes Plaintiffs' Motions *in Limine* **Nos. 17 and 18**.  The testimony thus far confirms that there was a difference in the level of housekeeping and enforcement of housekeeping procedures between IP's Mansfield Mill (a $2B asset) and its off-site storage warehouse (a $7M asset).  The disparity in value between these two assets lends context to the disparity in the manner in which housekeeping was performed and enforced between IP's Mill and the storage warehouse in question

---

[7] Deposition of Oren Ruth taken on October 24, 2013, pgs 29-31, marked and attached as Exhibit "A"

Defendant objects and opposes Plaintiffs' Motion *in Limine* **No. 19** on the grounds that the failure to call a witness, whether unavailable or not allowed, is part of the adversarial process, and under our rules of advocacy, defendant should be able to make this argument in their closing as to a reasonable inference to be drawn from the plaintiffs' failure to call a witness. Therefore, defendant submits that this Motion *in Limine* should be denied.

Defendant recognizes that this Motion *in Limine* **No. 20** raises valid concerns, but this is a motion that should apply equally to all parties.

Defendant opposes Plaintiffs' Motion *in Limine* **No. 21** to the extent that it seeks to limit or exclude the testimony of fire origin and cause experts as to the accepted use and application of NFPA 921 and the scientific method in fire origin and cause investigations.  This is in the learned province of experts and fulfills the role of experts pursuant to Federal Rule of Evidence 702, et seq.

In opposition to Plaintiffs' Motion *in Limine* **No. 23**, defendant references and adopts its previously filed briefs on this issue, Doc. 208 and Doc. 233.

Defendant opposes Plaintiffs' Motion *in Limine* **Nos. 24 and 25**.  The fact that Plaintiffs have had other fires at the facility in question and at other IP facilities is highly relevant, and the probative value of same far outweighs any purported prejudicial effect. With respect to other fires in paper storage environments, there can be and are other causes of these fires than what is being argued by plaintiffs in the instant matter.

Defendant objects to and opposes Plaintiffs' Motion *in Limine* **No. 26** as the actions of International Paper and FM are at issue.  It is clear from the deposition testimony that IP employed a warehouse operator who has never operated a baled fiber storage facility before.[8] Additionally, the warehouse operations by Tango and the failure to train by IP was a direct cause

---

[8] Deposition of Steven Abramowitz taken on September 24, 2015, pg 20, line 25 – pg 21, line 2, marked and attached as Exhibit "B"

of this fire loss.  In fact, Richard Pakkala, a Sr. Property Protection Engineer for IP, has testified that Tango did not take all precautions to protect IP's assets.[9]  Additionally, IP was to have trained an operator like Tango. Steven Abramowitz, an enterprise distribution manager for IP, testified that when an IP mill has a new operator, the mill will instruct the operator on how to store the paper, how high to stack it, to keep the floors clean, to keep the aisles clean, that it is a not smoking facility and to inspect the fire extinguishers.  Clearly, there was an effort by IP to educate and train, and this is evidence that the jury should hear.  Furthermore, had IP properly trained Tango, the loss could have been prevented.  Thus, all of the facts and testimony concerning IP's actions, inactions, and omissions are relevant facts that should be presented to the Jury so that they can adequately determine and assess fault.  Both NFPA and ANSI are recognized standards that govern the baled storage operations and the selection of lift trucks, so this is relevant to the Jury.  The Property Loss Conservation Manual is a document that sets forth basic practices to IP's employees on the protection of IP's assets, and the Jury should decide if it applies and whether IP breached its own obligations and instructions contained in the manual. Plaintiffs argue that certain things were not foreseeable to them, but they were.  There had been fires at both IP and Tango's operations, pre and post loss.  The Property Loss Conservation Manual is a manual that makes recommendations and establishes practices in order to protect assets and in many cases, help prevent fires.  These documents are relevant and should be allowed into evidence.  Accordingly, the Plaintiffs' Motion *in Limine* No. 26 should be denied.

Defendant objects to and opposes Plaintiffs' Motion *in Limine* **No. 27** as the actions of International Paper to educate and control Tango are at issue.  It is clear from the deposition testimony that IP employed a warehouse operator who have never operated a baled fiber storage

---

[9] Deposition of Richard Pakkala taken on September 25, 2015, pg 28, lines 15-19, marked and attached as Exhibit "C"

facility before.[10]   As such, it is reasonable that IP should have taken steps to educate an operator who had no experience in this field.   IP's actions in failing to educate and train Tango are relevant.   Deep South contends that IP's failure to educate and train was a direct cause of this fire loss.   Richard Pakkala, a Sr. Property Protection Engineer for IP, testified that Tango did not take all precautions to protect IP's assets.[11]  Additionally, IP was to have trained an operator like Tango. Steven Abramowitz, an enterprise distribution manager for IP, testified that when an IP mill has a new operator, the mill will instruct the operator on how to store the paper, how high to stack it, to keep the floors clean, to keep the aisles clean, that it is a not smoking facility and to inspect the fire extinguishers.[12]  Clearly, there was an effort by IP to educate and train, and this is evidence that the jury should hear.   Thus, all of the facts and testimony concerning IP's actions, inactions, and omissions are relevant facts that should be presented to the Jury so that they can adequately determine and assess fault.   Accordingly, the Plaintiffs' Motion *in Limine* No. 27 should be denied.

Defendant opposes Plaintiffs' Motion *in Limine* **No. 28**.   With respect to the FM data sheets, these data sheets are recognized as standards in the fire protection industry.   They become public documents and are available and applicable to the paper fiber warehouse.[13]  With respect to the Property Loss Conservation Manual, this is indeed relevant and should have been provided to Tango for use at the Murphy Bonded Warehouse.   The manual addresses the protection of IP's assets.   Richard Pakkala was recently deposed and acknowledged that the baled fiber stored at

---

[10] See Exhibit "B"
[11] See Exhibit "C"
[12] Deposition of Steven Abramowitz taken on September 24, 2015, pg 13, line 20 – pg 14, line 15, marked and attached as Exhibit "D"
[13] Deposition of Dan Arnold taken on April 18, 2014, pg 24, line17 – pg 25 line 16, marked and attached as Exhibit "E".

the MBW is an IP asset.[14]  Accordingly, the Plaintiffs' Motion in Limine No. 28 should be denied.

Defendant objects to and opposes Plaintiffs' Motion *in Limine* **No. 29** as the statement, whether made out of court or under oath is still a statement that reflects a presence sense impression.  Furthermore, such statements are relevant and probative as they go to support that the potential ignition sources identified by the fire origin and cause investigator for defendant.  Further, Richard Pakkala, a Sr. Property Protection Engineer for IP, has testified that when the fire occurred, one of the things that he suspected was a fire from dragging bales.  The statement which plaintiffs want to keep out concerns a statement by Greg Charles that was made to his co-employee and to the fire department.  The fact is that this statement is relevant and it is one of the known ignition sources for baled paper storage facilities.  Accordingly, defendant submits that this motion should be denied.

Defendant objects to and opposes Plaintiffs' Motion *in Limine* **No. 30** in that the videotape from the news interview is confirmation of the statement made by Greg Charles as to the cause of the fire.  The Jury should be entitled to hear this as it is probative under Rule 401 to show that the facts in the statement as to the cause of the fire and actions by the employee are more probable than not.  As to whether the fire was witnessed, Greg Charles' actions in what he did and what he thought as to the cause of the fire are relevant and reflect his present sense impression, under Rule 803(1) on the issue of fire cause.  It further goes to establish what his actions were in the area of where the fire was discovered.  His statement will be used to show that he acted in a certain manner and in a certain area.  As to hearsay, defendant contends that the statement of Greg Charles is a party admission under Rule 801(d)(2)(A).  Alternatively, if the statement objected to is deemed hearsay, then under Rule 803(1), it should be deemed a present

---

[14] Deposition of Richard Pakkala, dated September 25, 2015, pg 8, line 21-23, marked and attached as Exhibit "F".

8

sense impression of Greg Charles' statement describing the events at the time of the fire. For the foregoing reasons, the Motion *in Limine* should be denied.

Defendant opposes Plaintiffs' Motion *in Limine* **No. 31**, in that the adjustment file itself is relevant and necessary in this matter.  Damages are in dispute.  The file contains a systematic chronology of this loss and adjustment, and the purported support for same, as well as notes of investigation into the fire.  The original adjuster, Oscar Rueda, is unavailable for trial.  His manager, John Kramer, is to testify at trial.  Mr. Kramer was deposed and it was apparent that he did not have personal knowledge of this adjustment and would be heavily reliant on the file materials for information.  Hence, the adjustment file would be necessary to refresh the witness's memory to provide meaningful testimony to the jury concerning the adjustment of the loss.

Defendants object and oppose Plaintiffs' Motion *in Limine* **No. 34**.  The adversarial process, the closing argument and the need for flexibility under these rules and given the fact the plaintiffs are allowed to go last, they can address these issues to the jury.  The fact is that this type of evidence is in the province of the Jury and goes to the weight of the evidence.  Therefore, Defendant submits that this Motion *in Limine* should be denied

Respectfully submitted:


        /s/ G. Dwayne Maricle                      .
G. Dwayne Maricle, #20938
Sean M. Casey, Esq. #23447
**MARICLE & ASSOCIATES**
#1 Sanctuary Boulevard, Ste 202
Mandeville, Louisiana  70471
Telephone: (985) 727-3411
Facsimile:   (888) 341-6954
Counsel for Defendant,
*Deep South Equipment Company*

*And*

Brian T. Butler, #17499 (T.A.)
**KEOGH, COX & WILSON**
P.O. Box 1151
Baton Rouge, LA 70821
Telephone:(225)-383-3796
Facsimile: (225)343-9612
Counsel for Defendant,
*Deep South Equipment Company*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served on the following

counsel of record via courts electronic filing system on the 29th day of September, 2015:

**John C Hart, Esq.**
**Bruce H Rogers, Esq.**
Brown Dean Wiseman Proctor
   Hart & Howell, LLP
200 Fort Worth Club Bldg
306 W 7th St, Ste 200
Ft Worth, TX 76102-4905
817-332-1391
817-870-2427 (fax)
jhart@browndean.com
brogers@browndean.com

**James A Mijalis, Esq.**
Lunn Irion Salley Carlisle
   & Gardner
P O Box 1534
Shreveport, LA 71165-1534
318-222-0665
318-220-3265 (fax)
jam@lunnirion.com

**Robert H Shemwell, Jr., Esq.**
**Brian D Landry, Esq.**
Weems Schimpf Gilsoul Haines
   Landry & Carmouche
912 Kings Hwy
Shreveport, LA 71104
318-222-2100
318-226-5152 (fax)
shemwell@weems-law.com
landry@weems-law.com

      /s/ G. Dwayne Maricle                .
        **G. DWAYNE MARICLE**