UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

INTERNATIONAL PAPER CO., ET AL        CIVIL ACTION NO. 11-cv-0017

VERSUS

DEEP SOUTH EQUIPMENT CO., ET AL        MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

**Introduction**

International Paper ("IP") operates a paper mill near Mansfield, Louisiana.  It leased a warehouse in nearby Red River Parish to store used paper and corrugated containers that would be used as feedstock.  Tango Transport ("Tango") operated the warehouse for IP.

Tango rented a lift truck from Deep South Equipment Company ("Deep South") to use in the warehouse.  The truck was built by NACCO Materials Handling Group, Inc. ("NACCO").  Several days after the truck arrived at the warehouse, it was parked in an area lit by a high-intensity light made by Sylvania.  An employee smelled smoke and discovered that a fire had broken out near the truck.  The warehouse was  destroyed.

IP had an insurance policy from Factory Mutual Insurance Company ("FM").  The insurer paid IP for its losses, including the cost of demolition and rebuilding the warehouse. IP and FM ("Plaintiffs") then filed this complaint against Deep South, NACCO, and Sylvania.  They alleged that the only potential sources of ignition of the fire were the truck and the light.

Plaintiffs originally alleged that Sylvania, the manufacturer of a metal halide lamp used in the warehouse, may have been responsible for the fire.  Sylvania filed a motion for summary judgment, which Plaintiffs did not oppose.  The court granted summary judgment for Sylvania and dismissed it from the case. Docs. 64 & 66.

Plaintiffs asserted a claim against NACCO, the manufacturer of the truck, under the Louisiana Products Liability Act.  They alleged that NACCO should have warned Deep South (the distributor) that the truck was unsafe for use in paper handling service, unless equipped with an optional paper package, because loose paper could be drawn into the engine compartment and brought into contact with exhaust components.  NAACO moved for summary judgment on the grounds that (1) Deep South was a sophisticated user to whom NACCO did not owe a duty to warn and (2) the warning NACCO provided was adequate. The court agreed, and all claims against NACCO were dismissed.  Doc. 197.

The only remaining defendant is Deep South (which has a third-party claim against Tango). Deep South has filed several motions in limine, and Plaintiffs have filed one motion in limine. The motions are granted in part and denied in part as set forth below.

**Exhibits P-216, P-256 & P-258**

Deep South filed a **Motion in Limine (Doc. 212)** that challenges Exhibits P-216, P-256 and P-258.  Plaintiffs do not contest the exclusion of the first two exhibits.  Exhibit P-258 is a drawing of the warehouse area prepared by Johnny Thornton, who was retained by Plaintiffs as an expert but was the subject of a successful Daubert challenge.  Plaintiffs

apparently intend to call Thornton as a fact witness.  Deep South argues that the drawing should be excluded because it is hearsay and not accurate because the location of a light fixture does not clearly indicate if it is the pre-fire location or post-fire location.  **Deep South's request to exclude Exhibit P-258 is denied**.  The drawing may be admissible with a proper foundation by Thornton.  Deep South may cross-examine Mr. Thornton about the accuracy of the drawing and clarify any perceived confusion. It is hoped that the parties can stipulate to the admission of many such exhibits and avoid wasted time before the jury.

**Prior Convictions**

Deep South filed a **Motion in Limine (Doc. 209)** to exclude evidence of prior criminal convictions of witnesses Anthony Baker and Evan Bowers.  Plaintiffs respond that they do not plan to introduce any such evidence, so this motion is **denied as moot**. (Plaintiffs actually made a similar motion as to Anthony Baker, which indicates that some communication between counsel could have saved time for counsel and the court.)

**Forest Smith Opinion**

Forest Smith is an electrical engineer retained by Plaintiffs to provide expert testimony.  It is expected that he will testify that a Sylvania High Intensity Discharge ("HID") light fixture and lamp recovered from the fire scene can be eliminated as a cause of the fire. Deep South filed a **Motion in Limine (Doc. 213)** and argued that Smith should not be allowed to offer such testimony based on evaluation of the glass fragments because Smith

was not involved in the collection of the fragments and did not determine what evidence of fixtures and lamps was recovered from the scene.

This motion is **denied**.  It is, as Plaintiffs argue, an untimely <u>Daubert</u> motion that attempts to exclude all or a substantial amount of an expert's testimony based on his methodology.  The deadline for filing such motions has passed. Furthermore, the motion does not contain sufficient evidence about the glass collection process and Smith's methodology to make a determination on the issue.

**Circle Tree Reinsurance Payment**

The Mansfield IP mill absorbed the first $500,000 of the loss as its deductible.  FM paid IP a total of more than $10,000,000 under its policy.  Circle Tree Insurance, which Plaintiffs represent is a wholly owned subsidiary of IP, had a reinsurance relationship that made it responsible for the first $1,500,000 of losses above the deductible.  Deep South has filed a **Motion in Limine (Doc. 208)** that asks the court to preclude Plaintiffs from introducing evidence of damages for losses in excess of $500,000 and up to $2,000,000, to reflect the damages paid for by Circle Tree (which is not a party to this case).  Deep South argues that only Circle Tree is the proper party to assert such claims.

This $1.5 million issue is not the sort of evidentiary matter typically presented in a motion in limine.  Rather, a substantive claim of this nature should have been presented by a dispositive motion, the deadline for which has passed.  It is also difficult to imagine how

such an evidentiary limitation could be implemented at trial. How could the parties present evidence of damages without mention of damages attributable to a certain range?

Furthermore, Plaintiffs represent that the evidence of damages that will be offered is less than the amount paid by FM because recovery sought at trial is only for the fair market value of the building, rather than the replacement cost paid by FM.  They represent that the issue of compensation back to Circle Tree based on any recoveries is an issue between FM and Circle Tree.  Deep South has not made a compelling case that the $1,500,000 is not recoverable or that evidence of such losses should and could somehow be excluded at trial. Deep South's motion is **denied**.

**NFPA 921 Terms of Art**

Deep South filed a **Motion in Limine (Doc. 214)** that asks the court to preclude Plaintiffs' counsel and witnesses from asking questions or providing responses that use any of several fire investigation terms defined in NFPA 921.  Those terms include origin, area of origin, fire pattern, burn pattern, arc, arc site, and arc mapping.  Deep South also asks that counsel and the witnesses be precluded from using any terms that are synonymous with those terms.  The motion is **denied**.

Counsel must be able to use such terms to properly examine witnesses, including defense experts.  Plaintiffs' experts Robert Friedemann and Forest Smith are represented to work in the area of fire investigation and are familiar with NFPA 921 and the terms used in it.  Deep South has not shown that they should be banned from using such terms.  The extent

of the opinions they may offer at trial will be limited by the area of expertise in which they are accepted as experts.

**Robert Friedemann: Temperature of Exhaust Manifold**

Plaintiffs hired Robert Friedemann to provide expert testimony on temperatures of surfaces within the engine compartment of the Hyster lift truck.  His original report described testing that purported to show exhaust temperatures rising to the 600 to 700 degree range.  Friedemann later issued a supplemental report that described a test he performed in 1996 where paper was placed around a Hyster lift truck exhaust pipe that was heated to between 580 to 620 degrees, and the paper was observed flaming within about five minutes.

Deep South filed a motion to strike the supplemental report, which the court granted in part and denied in part.  Portions of the report about the 1996 testing were stricken as untimely; they were available to Friedemann when he issued his original report and should have been included within the deadlines.

Deep South has now filed a **Motion in Limine (Doc. 211)** that asks the court to prevent Friedemann from testifying about the temperature of the exhaust manifold because his testing described in his original report is unreliable due to lack of adequate basis for his estimate of the weight carried by the truck, as well as inadequate information about matters such as the ambient temperature at the time of the fire, run distance, humidity, wind, and the like.  Deep South also faults Friedemann for not properly calibrating his testing equipment and not knowing the service history of his test truck.  This attack on Friedemann's

methodology may have been a basis for a <u>Daubert</u> motion, but the deadline for such motions has passed.  The motion is **denied**.  Deep South may cross-examine Friedemann about the perceived deficiencies in his testing.

**Paper Application Kit**

Plaintiffs originally offered Johnny Thornton as an expert witness.  Thornton planned to testify that the fire originated in the engine compartment of the lift truck and was caused by ignition of paper products in proximity to the unprotected exhaust manifold.  The court granted a <u>Daubert</u> challenge to Mr. Thornton.

Deep South now presents a **Motion in Limine (Doc. 210)** that asks the court to exclude all evidence or mention of "anything related in any way to the fact that Deep South rented a forklift to Tango that did not have a paper application kit installed."  Deep South argues that such evidence is irrelevant given the lack of expert testimony that its absence was a cause of the fire.  It also argues that the absence of such a kit is irrelevant because Deep South did not owe a duty to IP to only rent lift trucks equipped with paper application kits.

Deep South's motion is **denied**.  It has been a central point of this litigation that the suspect lift truck lacked a paper kit, which the other trucks at the facility had.  It is also well established that the manufacturer of the truck recommended a paper kit for applications such as the work in the warehouse.  The court will not parse the evidence and exclude a central fact from the knowledge of the jury merely because there is not an expert who will offer an

opinion that directly implicates that fact.  Furthermore, Plaintiffs take the position that they can prove the cause of the fire without an expert on cause and origin.

Deep South argued in an earlier motion for summary judgment contest that Plaintiffs could not meet their burden without an expert, but the court refused to address the issue because Deep South did not raise it until the sixth and final brief related to the motion. Plaintiffs will, therefore, be allowed to proceed to trial and attempt to shoulder their burden without an expert.  All parties should nonetheless be prepared to present authorities on the issue, as it is may ripen during the course of the proceedings.

**Douglas Hakala: Spoliation**

Douglas Hakala was employed by FM as an engineering specialist.  He was directed to go to the warehouse on the day after the fire to determine what happened and help IP minimize business interruption.  He inspected the site on January 11, 2010, just four days after the fire.  Representatives for Deep South did not visit the fire scene until nearly three weeks afterwards.

Mr. Hakala submitted a written report that included some imbedded photographs.  He retired during the course of this litigation and, upon retirement, threw away his handwritten notes that supported the report.  He said at his deposition, years after he retired, that he took photographs other than the four in the report.  Deep South complains that FM did not produce any other photographs.  Hakala says they may have been on his company computer

that he turned in upon retirement.  His memory of the events was poor, and he relied largely upon his written report.

It was determined that there were two versions of the Hakala report.  The original report, plus one that had been revised within the company.  Hakala said he was not aware of his reports ever being revised, but FM represents that Hakala would not have known how his reports were revised after submission.  FM states that the reports were prepared for internal use only and were revised to clarify issues, correct typographical errors, and remove opinions not within the expertise of the report writer.

Hakala's original report included a statement that the lift truck had been parked for "two hours" before an employee smelled smoke.  The revised version states that the engine was shut off and an employee smelled smoke "some time later."  Hakala's original report stated that the fire was in the "front and underneath the clamp truck" while a revised report stated that it was in the "front and underneath the engine compartment of the clamp truck." Hakala put in his original report that the clamp truck had been idle for two hours and the "most probable cause" appeared to be material being ignited by a hot surface of the truck. FM revised the report to state that the exact cause of the fire could not be determined, but eyewitness accounts indicated that the fire originated in the clamp truck that had been parked.

Deep South argues that the changes tend to favor Plaintiffs' theory that the truck started the fire.  FM denies such intent and notes that it actually removed Hakala's opinion that the truck was the most likely cause, which the insurer says it did because of Hakala's

lack of expertise on that subject.  FM represents that it has turned over all pictures of the site that it had in its possession, and it says it did not know Hakala had notes until his retirement. FM states that its policy is that Hakala should have used his notes to create a report, turned in the report, and then disposed of his notes.

Deep South asked the court to instruct the jury to draw the inference that a party who intentionally destroys important evidence in bad faith did so because the contents of those documents were unfavorable to that party.  Deep South also asks the court to allow it to put on evidence of the alleged spoliation.  The written submissions do not suggest that Hakala acted in bad faith or to cover up evidence that might have helped Deep South, and there is no indication that any additional photographs (if they exist) or the field notes would have been favorable to Deep South.  Based on the showing made, Deep South's **Motion in Limine (Doc. 207)** is **denied in part and granted in part**.  Deep South will be allowed to question Mr. Hakala and other relevant witnesses about the revisions to his report, the missing field notes, and the other photographs.  If the evidence at trial is more compelling, the court may reconsider whether a jury instruction is also appropriate.

**Plaintiffs' Motion in Limine**

Plaintiffs filed an in globo or omnibus **Motion in Limine (Doc. 206)** that raises multiple challenges to admission of matters such as evidence not listed in the pretrial order, communications between client and attorney, opinion of an expert outside the scope of his report, and the like.  Such rules apply in all cases, no matter whether a motion in limine is

filed.  The motion also makes arguments to exclude matters such as evidence of spending money on liquor, or evidence of church attendance or tithing, but it does not explain how the arguments have any particular application to the facts and witnesses in this case.

There appear to be a few arguments among the 35 that have some particular relevance to the facts in this case, but the motion is **denied** based on its overall generic character and this court's strong disfavor of such omnibus motions.  If Plaintiffs wish a pretrial ruling on any particular evidentiary issues that are actually relevant to this case, they may point them out at the pretrial conference.

**Deep South's In Globo Motion in Limine**

**Introduction**

Deep South has also filed an in globo **Motion in Limine (Doc. 215)** that contains a number of generic arguments or repetition of arguments made in other motions in limine. Those arguments will be ignored.  The motion is otherwise **granted in part and denied in part** as follows.

**Robert Russell and Leslie Miles**

Deep South moves to exclude any expert testimony from Plaintiffs' witnesses Robert Russell and Leslie Miles on the grounds that Plaintiffs did not comply with the disclosure requirements of Rule 26 regarding experts.  Deep South contends that Plaintiffs did not submit reports for Russell and Miles by an agreed deadline of October 29, 2012.  Rather, they

did not produce the joint report until November 27, 2012, and it did not comply with the requirements of Rule 26 by listing prior cases or the compensation received.

Plaintiffs respond that a joint report was submitted on October 17, 2012, within the extended deadline, and included information about prior testimony and compensation.  They attach a copy of the report, plus a green card mail receipt that indicates the report was received by defense counsel on October 25.  Plaintiffs suggest that Deep South may be confused because a modified report was submitted in late November 2012 to supplement the initial report.  Plaintiffs add that Deep South has never requested to depose Miles or Russell regarding their opinion of the fair market value of the building.  And Deep South has not demonstrated that the report from these witnesses was untimely or omitted any necessary information.  On the showing made, and considering that Deep South did not complain about the alleged tardiness until three years later on the eve of trial, Deep South's Motion in Limine is **denied** as to these witnesses.

**Scott Windels**

Scott Windels is expected to testify for Plaintiffs regarding the value of the paper that was destroyed.  Deep South asks to exclude him as a witness because Plaintiffs identified Windels as a non-retained expert but never specified that he would testify at trial or produced any report prepared by him.  Plaintiffs respond that Windels was not required to prepare a report, and they note that Deep South has not made any effort to take his deposition.

Rule 26 requires a written report by a witness who is retained or specially employed to provide expert testimony in a case or if his duties as a party's employee regularly involve giving expert testimony.  The court has few facts to go on, but it does not appear Windels falls within that description, so he did not have to prepare a report.

Rule 26 has a separate requirement for witnesses who do not have to provide a written report.  The rule states that a party must disclose the witness's identity, state the subject matter on which the witness is expected to present opinion evidence, and give a summary of the facts and opinions to which the witness is expected to testify.  The record does not reflect whether such a disclosure was made, whether Deep South otherwise had the necessary information, or whether there was any resulting prejudice.  The motion to exclude Windels is denied on the showing made, but the issue may be discussed further at the pretrial conference.

### Negligence and LPLA

Plaintiffs assert claims against Deep South under the theories of negligence and the Louisiana Products Liability Act ("LPLA").  Deep South argues that Plaintiffs should be prohibited from asserting both theories of recovery because the LPLA establishes the exclusive remedy against manufacturers for injuries arising from product defects. The LPLA is usually considered to have a heavier burden than an ordinary negligence claim, so most plaintiffs attempt to assert negligence claims even when possibly limited to the LPLA.  In

this case, Plaintiffs are able to assert a negligence claim, but they also wish to pursue an

LPLA claim that is applicable only if they show that Deep South is a manufacturer.

Deep South's motion to bar Plaintiffs from presenting both claims is **denied**.

Plaintiffs may pursue the claims in the alternative.  If Plaintiffs do go forward with both

claims in the alternative, it is likely that the court will first instruct the jury on the LPLA

claim and ask it to determine whether Deep South is a manufacturer.  If the answer is yes,

that will be the sole theory the jury may consider, and Plaintiffs will have to meet their

burden under the LPLA.  If the jury answers that Deep South is not a manufacturer, then the

jury will be able to consider a claim under a theory of negligence.  If Plaintiffs should decide

to drop their claim under the LPLA, the jury would be charged solely with the law applicable

to a negligence claim.

**Exhibits**

Deep South moves to exclude Exhibit P-262.  (Plaintiffs note that Deep South lists the

same exhibit.)  It appears to be a fairly lengthy engineering test report regarding paper

package development and related testing.  Deep South argues that it contains hearsay, relates

to models of lift trucks that are not the same as the one at issue, and is an attempted end run

around the court's Daubert ruling by gaining admission of ignition temperature data and

engine component temperatures found in the report.  Plaintiffs respond that the report is not

hearsay to the extent it is offered to prove tests were conducted rather than the results of the

tests.  It also argues that the report is relevant because it shows a broad cross-section of Hyster combustion engine lift trucks.

The report, by itself, is inadmissible as it contains a great deal of hearsay.  There are perhaps portions of it that could become relevant or admissible through the testimony of a particular witness.  Accordingly, the exhibit is not stricken, but it may not be admitted by either party without the presentation of a proper foundation and showing of admissibility.

Deep South objects to Exhibit P-235 (21 photographs not included in Forest Smith's report) and Exhibits P-156, 157 and 261 (notes and diagrams by Tony Perryman).  Plaintiffs do not object to their exclusion.

Plaintiffs also concede to the exclusion of Exhibits P-263 and 266 (Hyster price lists for parts).  Deep South also challenges some other similar documents.  Plaintiffs respond that those documents are offered not to prove the price listed but to prove that the parts were available for purchase.  Those exhibits are not excluded, but Plaintiffs will have to demonstrate relevance and admissibility at such time as the documents are offered, unless the parties can by then stipulate to admissibility.

Deep South challenges Exhibit P-267 (12 pages of Hyster product information bulletins) as hearsay.  Plaintiffs respond that the documents are not offered for the proof of their contents, but to show that the information was communicated from NACCO to Deep South.  Deep South has not shown that this exhibit must be excluded; it could be admitted with a proper foundation.

Deep South objects to Exhibit P-329 (Hyster forklift brochure) as hearsay.  Plaintiffs do not object to its exclusion.

Deep South also objects to Exhibits P-330 to 335.  Plaintiffs respond that these documents will be used only as part of a proffer, to the extent the proffer is allowed by the court.  Plaintiffs are not seeking to introduce these exhibits before the jury, so they are not excluded.  The proffer issues will be discussed later.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 30th day of September, 2015.

Mark L. Hornsby
U.S. Magistrate Judge