UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

INTERNATIONAL PAPER CO., ET AL     CIVIL ACTION NO. 11-cv-0017

VERSUS

DEEP SOUTH EQUIPMENT CO.     MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

**Relevant Facts**

International Paper Company ("IP") operates a paper mill near Mansfield, Louisiana. The mill makes paper from both wood pulp and recycled paper. IP leased a warehouse, known as the Murphy Bonded Warehouse, to store bales of paper that were awaiting recycling. IP purchased insurance, on the building and the paper, from Factory Mutual Insurance Company.

IP hired Tango Transport ("Tango") to operate the warehouse. Tango also hauled paper from the warehouse to the paper mill, which was located about five miles away.

Tango used Hyster brand lift trucks to move paper around in the warehouse. Tango purchased or rented the lift trucks from Deep South Equipment Company ("Deep South"), a Hyster dealer located in Shreveport. Tango rented an extra lift truck from Deep South in December 2009 pursuant to a Short Term Equipment Rental Agreement (the "Rental Agreement"). Twenty days later, a Tango employee smelled smoke and discovered that a

fire had started in the warehouse in the area near the rented lift truck. The fire destroyed the warehouse and the paper in it.

IP was paid for some of its losses by Factory Mutual under its insurance policy. IP and Factory Mutual (collectively "Plaintiffs") sued several defendants, including Deep South, alleging that the fire was caused by defective lighting in the warehouse or loose paper igniting in the engine compartment of the rental lift truck. Deep South filed a third party demand against several related Tango entities seeking indemnity and demanding that Tango provide a defense. Doc. 21. The third party demand was based on the following language in the Rental Agreement:

> Lessee (Tango) will save Lessor (Deep South) harmless from and reimburse Lessor for all damage to and loss of the equipment from any cause. Lessee further agrees to indemnify and hold Lessor harmless from all loss, damage, liability, cost or expense of whatsoever nature or cause, arising out of Lessee's use or possession of the equipment. The foregoing includes, without limitation, injury or damage to the person or property of Lessor, Lessee, or any third party, and their respective employees, agents and independent contractors. Equipment shall be operated only by Lessee or Lessee's employees.

Doc. 317-3.

Tango and Deep South filed cross motions for summary judgment on the third party demand. The court granted Tango's motion in part because the Rental Agreement was insufficient to impose a duty on Tango to indemnify Deep South for any losses sustained as a result of Deep South's own negligence. The court denied Tango's motion to the extent that Deep South had alleged Tango's negligence in operating the lift truck as a cause of the fire. According to the court, if Tango was negligent and that negligence was a cause of the fire,

then Tango may be bound to indemnify Deep South under the Rental Agreement. The court also found that Deep South's claim for attorney fees and costs was premature, as the lawsuit was not concluded and liability had not been determined. Doc. 63.

By the time of trial, the only remaining defendant was Deep South. The key issue at trial was centered on Plaintiffs' allegation that Deep South was responsible for their damages because it rented a lift truck to Tango that was not equipped with a paper application kit which may have prevented the paper from getting in the engine compartment and starting the fire. The jury ruled in favor of Deep South, finding that Plaintiffs failed to prove that the absence of a paper application kit on the lift truck was a cause of the fire. Doc. 278.

Phoenix Insurance Company ("Phoenix") insured Deep South and paid almost $1.2 million in defense costs for Deep South over the course of the litigation. Phoenix filed a third party complaint against Hudson Insurance Company ("Hudson"), which provided a contract of indemnity to Tango for "trucking operations." Phoenix argues that Hudson is liable to Phoenix for the $1.2 million in attorneys fees and expenses (less a $500,000 retention in Hudson's indemnity contract) pursuant to the indemnity provision in the Rental Agreement. Phoenix is not pursuing Tango on the third party demand because Tango filed for bankruptcy protection (Doc. 297) and the company no longer exists.

**Cross-Motions for Summary Judgment**

Phoenix and Hudson have filed competing motions for summary judgment (Docs. 317

& 320) regarding Phoenix's claim for indemnification. The motions present two key issues. First, is the indemnity language in the Rental Agreement broad enough to encompass indemnity for legal fees and costs paid by Phoenix on behalf of Deep South? Second, does Hudson's Indemnity Contract for Tango's "trucking operations" include coverage for Tango's operation of IP's warehouse?

**Law and Analysis**

### The Indemnity Agreement

Phoenix paid the attorneys fees and expenses incurred by Deep South solely because Plaintiffs alleged that Deep South caused the fire when it provided a lift truck to Tango that did not have a paper application kit. Deep South was forced to a jury trial to defend itself against Plaintiffs' allegations. Phoenix now seeks reimbursement from Hudson for the costs of that defense.

Hudson first argues that the Rental Agreement makes no mention of Phoenix in the indemnity clause. Because the attorneys fees were paid by Phoenix and not Deep South, Hudson argues, the indemnity provision does not apply.

Hudson's argument overlooks the fact that Phoenix was contractually subrogated to Deep South's rights when Phoenix paid the attorneys fees on behalf of Deep South. See Phoenix Policy, Ex. 5, para. 8, p.12. Phoenix was also legally subrogated to Deep South's rights upon payment of the fees. La. C.C. art. 1827; Stanfield v. Island Operating, 306

Fed.Appx. 175 (5th Cir. 2009). Therefore, if the indemnity provision is broad enough to cover attorneys fees and expenses, Phoenix is the proper party to recover them.

The indemnity provision in the Rental Agreement does not use words "attorney fees," "court costs" or "legal expenses." It does, however, obligate Tango to "indemnify and hold [Deep South] harmless from all loss, damage, liability, cost or expense of whatsoever nature or cause, arising out of [Tango's] use or possession of the equipment."

Under Louisiana law, the language in an indemnity agreement dictates the obligations of the parties. Kinsinger v. Taco Tico, 861 So.2d 669, 671 (La. App. 5 Cir. 2003). Indemnity provisions are construed in accordance with general rules governing contract interpretation. Liberty Mutual v. Pine Bluff, 89 F.3d 243, 246 (5th Cir. 1996). When the terms of a contract are unambiguous and lead to no absurd consequences, courts interpret them as a matter of law. Id.

Louisiana courts recognize that an indemnity provision can include attorneys fees, even if the provision does not specifically say so, if the provision is broad enough to "infer the obligation." Taco Tico, supra at 673. Courts have inferred the obligation when the provision goes beyond the mere obligation to pay "claims or damages." Plaia v. Stewart Enterprises, 2016 WL 6246912 (La. App. 4 Cir. 2016). For example, in Jennings v. Ralston Purina, 201 So.2d 168 (La. App. 2 Cir. 1967), the indemnity provision provided for protection against "any loss, damage, liability and expense." The court found that reasonable attorneys fees constituted an "expense" for which payment was owed.

Based on the foregoing, the court finds that the indemnity provision in the Rental Agreement is broad enough to include attorneys fees and expenses of litigation. The phrase "all loss, damage, liability, cost or expense of whatsoever nature or cause" goes far beyond the mere obligation to pay claims or damages. Under these circumstances, it is proper to infer the obligation to require Hudson to reimburse Phoenix's attorneys fees and litigation expenses paid on behalf of Deep South.

**Trucking Operations**

Even if the indemnity agreement covers the fees paid by Phoenix for Deep South, Hudson is liable to Phoenix for those fees only if there was a covered occurrence under Hudson's indemnity contract. As explained above, Hudson provided an indemnity contract to Tango to provide coverage for Tango's "trucking operations." Trucking Operations is defined in the policy as follows:

> "**Trucking Operations** means those activities necessary to the business of transporting property by vehicle for hire. **Trucking Operations** shall include the insured's garage operations, but only to the extent that the insured performs work on vehicles and/or equipment which are either owned by, or are under permanent lease to, the insured at the time of the performance of such garage operation. **Trucking Operations** shall not include any garage operations, including (but not limit to) maintenance, repair, fueling, painting, body repair, storage and/or replacement of parts, which the insured performs on any vehicle or equipment that is not, at the time of the performance of such garage operation(s), owned by, or under permanent lease to, the insured. To the extent that this definition of **Trucking Operations** affords coverage for the insured's garage operations, coverage shall only be afforded under Coverages A and B." [Bold in original.]

Doc. 317-6, p. 38 of 44.

Louisiana's general rules of contract interpretation apply to contracts of indemnity. Gilley v. Lowe's, 2015 WL 1726430 (W.D. La.). When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. Furthermore, the words of a contract must be given their generally prevailing meaning. La. C.C. art. 2047.

There is no doubt that Tango was, among other things, a major trucking company. Prior to its bankruptcy, Tango's tractor-trailers were commonly seen throughout Northwest Louisiana. The company was also involved in various other functions related to the storage and transportation of goods. But this lawsuit had absolutely nothing to do with Tango's trucks or trucking operations. Instead, this lawsuit arose out of Tango's operation of IP's warehouse. Operating a paper warehouse is certainly not necessary to the business of transporting property by vehicle for hire.

Phoenix points out that the warehouse operations were part of Tango's overall relationship with IP whereby Tango transported paper from the warehouse to the paper mill five miles away. But the fire in this case arose out of the operation of the warehouse and not as the result of transporting bales of scrap paper to the paper mill. If Tango had contracted only to transport the bales of paper from the warehouse to the mill and this litigation arose out of transporting the paper to the mill, then those activities would fit the definition of "trucking operations." But when Tango agreed to operate a warehouse for IP, it moved outside the definition of trucking operations into a completely different operation.

Accordingly, the occurrence (warehouse fire) did not arise out of Tango's trucking operations. As such, there is no coverage under Hudson's indemnity contract, and Hudson is not responsible for the fees and expenses paid by Phoenix for Deep South during this litigation.

**Conclusion**

The parties addressed numerous arguments and issues in their cross motions for summary judgment, but the two key issues involved the scope of the indemnity provision and whether the occurrence (fire) arose out of Tango's trucking operations. While the court believes the indemnity provision is broad enough to cover the legal fees and expenses Phoenix paid on Deep South's behalf, the court finds that the fire arose out of Tango's warehouse operations, not Tango's trucking operations. According, Hudson is not liable to Phoenix for attorney's fees and expenses.

Hudson's Motion for Summary Judgment (Doc. 317) is granted, and all claims against Hudson are dismissed with prejudice. Phoenix's Motion for Summary Judgment (Doc. 320) is denied. This ruling terminates the litigation. The parties are directed to submit a proposed Final Judgment to the court within 14 days.

Shreveport, Louisiana this 11th day of August, 2017.

Mark L. Hornsby
U.S. Magistrate Judge